admitted on all hands that the appellant's father possess- ed part of the land; and it is admitted that he was put in- to possession by his mother. It is of importance to us of how small a part we were put in possession; a partial execution by delivery of possession is sufficient to take it out of the statute of frauds.—1 *Powell on Cont.* 300, 301, 302. So too I shall not trouble the court to recapitulate the evidence as to improvements; upon that subject see 1 *Powell on Cont.* 295, 296, 297, 298.

THE COURT OF APPEALS, at this term, (June 1798,) *affirmed* the decree of the Court of Chancery.

— ⊗ —

# GENERAL COURT, (E. S.) APRIL TERM, 1799.

## HATCHESON *vs.* TILDEN & BORDLEY.

THIS was a special action on the case. The declara- tion stated, that the defendants were summoned as judges of the sheriff's election on the first Monday of October 1794. That the plaintiff was a candidate for the sheriff's office, and had the necessary qualifications according to law; that he had a majority of legal votes. Nevertheless the defendants, well knowing the premises, refused to return him as sheriff elect, to the damage of the plain- tiff 5000*l.* current money. The general issue of *not guil- ty* pleaded.

1. It appeared on the trial of the cause, that the plaintiff had 453 votes, *Jones* 443, and *Hall* 270. That the plain- tiff received the amount of real and personal property re- quired by the constitution, on the third day of the elec- tion, and not before. That the two other candidates had acquired it previous to the election. The defendants made a special return on the 8th of November 1794; but the governor and council refused to receive the return, and sent it back as informal, declaring that the defen- dants were the sole and exclusive judges of the necessary qualifications. Upon which a second return was made, in which *Jones* and *Hall* were declared duly elected for the office of sheriff of the county of Kent.

*Wright* and *Scott*, for the plaintiff, contended, that although the plaintiff had no real estate, yet if he had personal estate to the amount of 1000*l.* it was a sufficient qualification to make him eligible as sheriff. That the word "and," as expressed in the constitution, "*having real and personal property*," meant having real *or* personal,

APRIL 1799.

Hatcheson
vs
Tilden &
Bordley.

the disjunctive; and that such was the intention of the framers of the constitution. That the intention and meaning of the constitution was, that if the candidate had real or personal property to the amount required, it was sufficient to make him eligible.

CHASE, Ch. J. The proper qualification required by the constitution is, that the candi ate shall, at the time he is voted for, be an inhabitant of the county, above twenty-one years of age, and have *real and personal property* within the state above the value of 1000*l.* That the word *"and"* is used conjunctively, wherefore both real and personal property to that amount are expressly required, and cannot be dispensed with. All votes given for a candidate not having such qualifications, are to be thrown away and rejected as having no force or operation in law. The plaintiff can only be entitled to such votes as were given after he received the necessary qualifications, all votes in his favour previous being illegal and void.

2. The plaintiff not having given evidence of his possessing real property previo s to the election, his counsel offered to the jury a deed, executed before the election, by *James Dunn*, to the plaintiff and *Edward Worrell*, as trustees of an insolvent debtor, (the plaintiff being the survivor of *Worrell.*) for real and personal property, as evidence of the plaintiff's qualification.

*Key.* for the defendants, objected to this deed as incompetent and inadmissible, alleging that the plaintiff held the property not in his own right, but in trust for others.

CHASE, Ch. J. By this deed the plaintiff held the property as a trustee: it cannot be responsible for the debts or contracts of the plaintiff, but can only be disposed of according to the trust reposed in him by the deed. The constitution requires as a qualification for sheriff, such property, real and personal, above the value of 1000*l.* as will be ans verable, together with his securities, for the faithful performance of the duties of his office. The property conveyed by this deed cannot be amenable for such purposes, and therefore the evidence cannot be admitted.

3. The plaintiff's counsel then offered to give evidence of a right of the plaintiff to a pew in a church, as heir at law of his father, who held the said pew; they alleged that this pew was real property, which had fallen to the plaintiff by descent.

But this was rejected by the court without argument.

It appeared that the plaintiff had received the necessary qualifications about 12 o'clock on the third day of the election, and from the state of the polls, if he had received all the votes taken after that time, he could not have been elected.

VERDICT and judgment for the defendants.

———————

# GENERAL COURT, (E. S.) APRIL TERM, 1799.

## MONCRIEFF vs. GOLDSBOROUGH.

ASSUMPSIT on a *special agreement* for 1751*l*. current money, for certain lands sold by the plaintiff, and one *Crookshanks*, since deceased, at auction, and struck off to the defendant as the highest bidder, on the 23d of March 1792. The defendant refused to comply with the terms of the sale. The general issue pleaded.

The following facts appeared in evidence: That the plaintiff and *Crookshanks* were appointed trustees by the will of *A. Pattison* to make sale of his real estate. In pursuance of the said power, on the 23d of March 1792, having given public notice, they offered the lands in question at public sale, declaring that from the title papers it appeared that there were 582 acres of land, more or less. That they would not sell it by the acre, but by the quantity more or less; and that they would not warrant any particular quantity. That *Gustavus Scott*, esquire, the adviser and counsel of the plaintiff, bid the sum of 1750*l*. and the defendant bid 1751*l*. The auctioneer bid 1760*l*. That the defendant permitted the last bid to be withdrawn, and the land to be struck off to him as the highest bidder; which was accordingly done. Upon examination of the papers, it appeared by some of them that there was a deficiency of 40 or 50 acres, and that one of the deeds to *Pattison* had not been recorded, although executed according to law. The defendant then refused to comply with the terms of sale; but agreed to submit the case to the chancellor as referee, and for that purpose a statement of facts was reduced to writing and signed by both parties. The chancellor refused to act, and the plaintiff, as survivor of *Crookshanks*, instituted the present action.

It also appeared in evidence, that the defendant was a practising attorney, and had had the title papers in his possession for examination previously to the sale, and had expressed his satisfaction as to the title. That Gus-