# THEODORE A. K. HUMMELSHIME *vs.* JOSEPH HIRSCH ET AL.

*Mandamus to Try Title to Public Office—Parties—Right of Citizen and Taxpayer to the Writ—Charter of Cumberland—Taxes on Property of Councilman in Arrear at Time of Election—Payment on Day of Election Does Not Qualify—Insufficient Defenses to Mandamus to Oust from Office.*

The object of a writ of mandamus is to compel the performance of some act which the petitioner has a clear legal right to demand shall be done by the respondent, and when the petitioner has no other adequate remedy to enforce that right.

A mandamus is the proper remedy to oust a person acting as a municipal officer from the office when he was not legally elected thereto, and to require him to vacate the same, since that is the performance of an act which the petitioner has a right to demand.

In this State the title of the respondent to an office may be tried in a mandamus proceeding where the petitioner claims title to the office and is not only seeking to oust the respondent, but also to obtain possession of the office.

When the object of a mandamus is to require a person acting as a City Councilman to vacate the office because he did not possess the statutory qualifications at the time of his election, it is not necessary that the petition should be filed against the Mayor and City Council to compel them to fill a vacancy on the ground that the respondent's election was void.

A citizen and taxpayer of a municipality is entitled to apply for a mandamus to try the title to office of a City Councilman and to oust him therefrom on the ground of disqualification, although the petitioner does not himself lay claim to the office.

The Charter of the City of Cumberland (Act of 1910, Chap. 306) provides, in addition to an age and residence qualifica-

tion, that "each Councilman shall be the *bona fide* owner of property to the value of $500 and assessed for the same on the tax books of said city at the time of their election and for two years next prior thereto, the taxes on which shall not be in arrears." *Held,* that this provision as to payment of taxes relates to the time of election of a Councilman and not to the time of his qualification by taking the oath of office, and that consequently where a candidate for the office of Councilman was in arrears as to the taxes on his property on the day of his election, but paid the same afterwards, he is not entitled to the office.

The said Charter of Cumberland provides that the candidates to be voted for at an election for the City Council shall be selected at a primary election after the filing of an affidavit by them that they are qualified to hold the office, and that each Councilman shall be assessed on property to a certain amount at the time of the election, the taxes on which shall not be in arrears. The taxes on the property of a candidate for the Council were in arrears on the day of the election, but at three o'clock in the afternoon of that day he endeavored to pay them, but could not find the tax collector. *Held,* that even if he had paid the taxes at that time it would not have been sufficient to qualify the candidate, since it was the purpose of the charter that only those candidates who possessed the required qualification should be voted for at the election.

When a petition is filed by two persons asking for a mandamus to oust from a municipal office a person exercising its functions on the ground that he was not qualified at the time of his election, it is not a bar to the relief asked for that there is pending in Court an election contest between the respondent and one of the petitioners involving the claim of the latter to the office.

It is not a sufficient answer to a petition for a mandamus to try the title of the respondent to a public office to allege that one of the petitioners for the writ was actuated by malice and ill-will towards the respondent in filing the petition.

*Decided November 30th, 1910.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Benjamin A. Richmond* and *David A. Robb* (with whom was *D. Lindley Sloan* on the brief), for the appellant.

*Albert A. Doub* and *Walter C. Capper* (with whom were *W. C. Devecmon* and *David J. Lewis* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

By the Act of 1910, Chapter 306, a new Charter was enacted for the City of Cumberland. Section 97 of this Charter provides that candidates for Mayor and City Council shall be nominated at a primary election "to be held on the second Tuesday preceding the general municipal election," and that "any person desiring to become a candidate for Mayor or City Council shall, at least ten days prior to said primary election, file, or there shall be filed for him, a statement of such candidacy" under oath, giving his place of residence in said city, stating that he is a qualified voter therein, that he is qualified to hold and is a candidate for a nomination for the office, and that he requests his name to be printed upon the primary ballot, "and shall at the same time file therewith the petition of at least one hundred qualified voters, requesting such candidacy," and stating that they know the candidate to be a man of good moral character and qualified, in their judgment, for the duties of such office. This section further provides that "the two candidates receiving the highest number of votes for Mayor shall be the candidates, and the only candidates, whose names shall be placed upon the ballot for Mayor at the following general municipal election, eight candidates receiving the highest number of votes, or

all such candidates, if less than eight, shall be the candidates, and the only candidates, whose names shall be placed upon the ballot for councilmen at such municipal election." By section 98 the Board of Election Supervisors of Allegany County are required to order an election to be held on the sixteenth day of May, 1910, and it provides that the manner of holding such election shall be governed by the laws of the State of Maryland regulating general elections, and that the Mayor and Councilmen elected at said election "shall hold office from the first Monday in June, 1910, until the first Monday in April, 1912, and until their successors shall have been duly elected and qualified."

On the 7th of June, 1910, the appellee, Joseph Hirsch, filed in the Circuit Court for Allegany County a petition for a *mandamus* against the appellant, in which he alleged that he was, and had been for many years, a citizen of and a voter and tax payer in the City of Cumberland, and as such was interested in having the affairs of said city "managed in an orderly and lawful manner, and by officers duly qualified to manage the same;" that by the terms of the Charter of Cumberland "Each Councilmen of said city must be the *bona fide* owner of property to the value of $500.00, and be assessed for the same on the tax books of said city at the time of his election, and for two years next prior thereto, the taxes on which shall not be in arrears;" that at the election held on May 16th, 1910, the appellant, Theodore A. K. Hummelshime, "was returned as having been elected a member of said Mayor and City Council, to wit, as a Councilman, and is now assuming to act and is acting as such Councilman;" that at the time of said election the appellant was assessed on the tax books of the city with property of the value of $500.00, but "that at the time of said election the taxes so assessed against" the appellant "were in arrears and unpaid, and remained so in arrears and unpaid for some days thereafter, and that by reason thereof said Hummelshime was not qualified at the time of his election, and is not now qualified

to act as Councilman of the City of Cumberland." The peti-
tion further alleges "that the newly elected body of Mayor
and City Council convened for organization on the morning
of June 6th, 1910," and that the petitioner, by his counsel,
on that day "appeared before said body and the said Theo-
dore K. Hummelshime—and stated that he wished to pro-
test against said Hummelshime's acting as Councilman, for
the reason that he was disqualified at the time of his elec-
tion;" that said body as a whole declined to hear any state-
ment in reference to the matter "at that time and place, and
said Hummelshime then and there stated that he had been
duly elected and that he intended to and would act as Council-
man." The petition then charges that by reason of the fact
that the appellant was disqualified at the time of his election,
the election of the appellant was void, and that it was his
"duty to refrain from entering upon the discharge of the
powers, privileges and functions of said office," and that it
is now his duty to vacate said office, but that the appellant,
wholly disregarding his duty in the premises, refuses to
vacate said office, and continues to exercise the functions
thereof, and the petitioner prays that a writ of *mandamus*
may issue commanding the appellant to vacate the office of
Councilman and to cease from exercising the functions there-
of. On the 11th of June, 1910, the appellee, J. Semmes
Devecmon, was made a party plaintiff in the case, and on
the same day the Court passed an order requiring the ap-
pellant to show cause why the writ should not issue.

The appellant demurred to the petition, and the demurrer
having been overruled, he filed his answer, in which he ad-
mits the facts alleged in the petition but denies that he was
disqualified at the time of the election, and says that at the
time of the election he was a *bona fide* owner of property to
the value of $500.00, and was assessed for the same on the
tax books of the city at the time of his election and for two
years prior thereto; "that, on the said sixteenth day of May
before the hour of three o'clock in the afternoon, he, the

said Hummelshime, went to the office of Anthony Minke, the tax collector for said city, to pay any and all taxes which he at that time owed to the City of Cumberland for the fiscal year 1909-1910; that it was the custom and the duty of the said Minke to be at his office, which was then and is provided for him at the Water Works Building, on Green street, in the said city, from about the hour of nine o'clock in the morning until five in the afternoon, except for about an hour from twelve o'clock on, to receive the taxes from the taxpayers of the City of Cumberland and to give receipts therefor, which duty and custom was well known to this respondent at that time and for a long period of time prior thereto; that the said Minke was not at his office of tax collector as aforesaid, nor at the Water Works of the City of Cumberland, which is near thereto, and the said Hummelshime could not find him and did not know where he was, though the said Hummelshime inquired of city employees near said office who informed him that they did not know where the said Minke was and that, from their knowledge, he had not been around his office during that day, except once very early in the morning, but they believed he could be found somewhere on the streets in the business portion of the town, and there was no one at said office to receive said taxes which your respondent was ready and anxious to pay and to give him a receipt for the same, and your respondent did not know and could not find out where the said Minke was, so that said taxes could be paid, although he diligently endeavored to find said Minke for the purpose aforesaid; * * * that he, the said Hummelshime, owed the City of Cumberland no taxes other than those for the year 1909-1910 on the said sixteenth day of May, 1910; * * * that on the 23rd day of May, 1910, he paid to the tax collector of the City of Cumberland all taxes which had been assessed against him on the books of said city; that, on the second day of June, 1910, he qualified and took his oath of office before the Clerk of the Circuit Court for Allegany County, at which time he was the

*bona fide* owner of property to the value of five hundred dollars and had been assessed for the same on the tax books of the said city at the time of his election and for two years next prior thereto, the taxes on which were not in arrears; that, on the sixth day of June he entered into his office of Councilman, at which time he was the *bona fide* owner of property to the value of five hundred dollars and was assessed for the same on the tax books of the City of Cumberland at the time of his election and for two years next prior thereto, the taxes on which were not in arrears, and that, by reason of his said election and having the qualifications of Councilman and having taken his oath of office at the time aforesaid, and having entered into his duties, as aforesaid, and still retaining all the qualifications necessary for him to have, and acting as City Councilman of Cumberland, which he now is, he is legally acting as such City Councilman and performing the duties thereof."

By the fifth paragraph of his answer the appellant alleges that the appellee, Joseph Hirsch, "has filed in the Circuit Court for Allegany County a petition for a recount of the ballots cast at the election held on May 16, in the City of Cumberland, as aforesaid, in which petition for recount the said Joseph Hirsch did allege that he, and not the said Hummelshime, was elected as a member of said Council, and that the said Hirsch had received a greater number of votes for said office than the said Hummelshime, which said petition for said recount of the ballots is now on file with the Clerk of the Circuit Court for Allegany County, and said case arising from said petition is now pending in this Court, and that the petition for this mandamus does not lie for the reason that the issuing of the same would cause great confusion in the management of the government of the City of Cumberland." The answer further charges as a reason why the writ should not issue, that the petition "was filed by the said Joseph Hirsch from reasons of spite, hatred, malice and ill will on his part," and that the appellee, Devecmon, joined

in the petition at the request of said Hirsch; that the petition was filed for the purpose of embarrassing the appellant in the conduct of his office, and not from any "motive of public spirit or of doing a good and proper action in the interest of the voters and taxpayers of the City of Cumberland." The petitioners demurred to the answer, and this appeal is from the orders of the Court below overruling the demurrer to the petition, sustaining the demurrer to the answer and directing the writ to issue.

The several questions presented by these demurrers are:

1. Is *mandamus* the proper remedy to oust a municipal officer from an office to which he was not legally elected?

2. Does it lie at the suit of a citizen and taxpayer who makes no claim to the office?

3. Does the provision of section 100 of the Charter, to wit, "the taxes on which shall not be in arrears," relate to the time of the election of a city councilman or to the time of his qualifying?

4. If the provision of section 100 refers to the time of his election, does an effort on the part of a candidate to pay his taxes at three o'clock on election day, and payment of the same several days after the election, relieve him of the disqualification?

5. Is it a sufficient answer to the petition of citizens and taxpayers for a *mandamus* to oust a municipal officer from an office to which he was not legally elected, to say that there is pending in Court an election contest between him and one of the petitioners, or that one of the petitioners was moved to file the petition by malice and ill-will, and that the petition was filed for the purpose of embarrassing the respondent in the conduct of his office?

1. The writ of *mandamus* is an extraordinary remedy, and is never to be resorted to except where the petitioner or relator has a clear legal right to the performance of a particular act or duty by the respondent, and where the law affords no other adequate remedy. In *High on Extraordinary*

*Legal Rem.,* section 10 (2nd ed.), it is said: "The test to be applied, therefore, in determining upon the right to relief by *mandamus,* is to inquire whether the party aggrieved has a clean legal right, and whether he has any other adequate remedy, since the writ only belongs to those who have legal rights to enforce, and who find themselves without any appropriate legal remedy." Or as stated by Mr. Poe: "In order to justify the intervention of the Court and the issuing of this writ, there must be a specific legal right, as well as the want of a specific and adequate legal remedy, and it must be necessary for the purpose of compelling the performance of an act which has either been refused or where circumstances sufficiently indicate an intention to refuse it. It is, accordingly, a proceeding at law, where the purpose of the applicant is not to recover damages for a wrong done, nor to enjoin a party from committing a threatened wrong, but to compel the performance of a positive act, in cases where such remedy is alone adequate to meet the justice of the particular case." 2 *Poe's P. & P.,* sec. 709 (3rd ed.) ; see also *Brown* v. *Bragunier,* 79 Md. 234. The distinction between a writ of *mandamus* and a writ of injunction is that the office of the former is to compel the performance of an act, while the latter is a restraining or preventive remedy. This distinction is clearly illustrated and defined in the case of *Legg* v. *Annapolis,* 42 Md. 203. In that case the Mayor, Counsellor and Aldermen of the City of Annapolis filed a petition against James Legg and others, alleging that in the exercise of the powers conferred upon them they had appointed a police force which was then in the discharge of its duties; that the Governor had appointed the appellants "under the title of The Board of Police Commissioners of Annapolis City," claiming the right to do so under a law which had never been passed or approved as required by the Constitution, and praying for a writ of *mandamus* commanding the appellants "to surcease and desist from exercising, or assuming to exercise, in any manner, any power or authority or

jurisdiction under said pretended Act" and further com-
manding them to abstain from interfering, etc., with the
police department established by the petitioners. JUDGE
ALVEY, in discussing the question whether *mandamus* was
the proper remedy, said: "This is the usual prayer for an
injunction, in a bill in equity, to restrain an unlawful inter-
ference with rights; but we are not aware of any precedent
for the use of the writ of *mandamus* to accomplish such a
purpose. *Mandamus* is a writ commanding the performance
of some act or duty, therein specified, in the performance of
which the applicant for the writ is interested, or by the non-
performance of which he is aggrieved or injured. *Reg. v.
Bishop of Chichester*, 2 El. & El. 209. But as simply a pre-
ventive remedy it has never been used, so far as we have
been able to discover. The nature of the writ, and the end
for which it was framed, direct upon what occasions it
should be used. It was introduced to prevent disorder from
a failure of justice, and defect of police. Its use is therefore
confined to those occasions where the law has established no
specific remedy, and where in justice and good government
there ought to be one." In the case at bar the prayer of the
petitioner is for a writ commanding the appellant to vacate
the office of city councilman, etc., and is like the prayer in
*Triesler* v. *Wilson*, 89 Md. 176. So far, then, as the nature
of the relief sought is concerned, requiring, as it does, the
performance of an act, the writ of *mandamus* is clearly the
appropriate remedy, and, in considering the first question
presented by the record, it only remains to be determined
whether there is another adequate remedy.

It is said in 23 *Am. & Eng. Ency. of Law*, 630 (2nd ed.),
upon authority of the long list of English and American
cases cited in the note, that "At common law, and the ab-
sence of statutes changing the rule and providing other reme-
dies, *quo warranto*, or the statutory substitute therefor, is the
appropriate and exclusive remedy to try the title to a public
office, and to oust a usurper." In such cases, except where

otherwise provided by statute, the sole issue tried is the respondent's title to the office, and the relator's or peittioner's title is not involved, further than is necessary to show a sufficient interest to maintain the proceedings, and cannot be determined. If the proceedings are instituted by one claiming the office, the only result accomplished is the ouster of the respondent, and the petitioner must then resort to a *mandamus* to effectively establish his right to the office." 23 *Am. & Eng. Ency. of Law,* 336 (2nd ed.). That such is the office and scope of *quo warranto* proceedings was distinctly recognized in *Harwood* v. *Marshall,* 9 Md. 83.

In this State, however, the rule is that the title of the respondent to an office may be tried in a *mandamus* proceeding where the petitioner claims title to the office, and is seeking not only to oust the respondent but to obain possession of the office. *Harwood* v. *Marshall, supra; Triesler* v. *Wilson, supra.* In the latter case Judge Pearce said: "The petitioners here seek not only the removal of the respondents, but the possession of their offices; and since the decision in *Harwood* v. *Marshall,* 9 Md. 99, it is settled that *mandamus* is the only proceeding in which the judgment could remove the occupant and install the petitioners." See also 19 *Am. & Eng. Ency. of Law* (2nd ed.), pages 767-769. In a note to 9 *Ann. Ch.* 20 *Alex. Brit. St.,* in force in Maryland, 695, Mr. Alexander says that it is the settled municipal law in England, "that if a man is *bona fide* in office, his title is not to be tried by *mandamus,* but by *quo warranto. Quo warranto,* therefore, in that country, is the proper proceeding to test the title of a party who has been elected, while *mandamus* is the proper remedy to enforce an election or admission into a vacant office. But in Maryland we have no proceeding by *quo warranto,* and *mandamus* is indifferently used for the one or the other object." And in the case of *Hawkins* v. *State,* 81 Md. 314, Judge Fowler disposes of the contention that *Harwood* v. *Marshall* is authority for the proposition that *quo warranto* is the proper remedy in this

State to remove one from an office he is illegally holding, as follows: "In the case of *Harwood* v. *Marshall,* 9 Md. 99, it was held that *mandamus* was the appropriate remedy for a party who claims title to an office, and asks for the removal of the occupant, and it being objected that *mandamus* did not lie because there was another legal remedy, to wit, *quo warranto,* the Court, assuming that it was an available remedy in such a case in Maryland, said that it was neither specific, nor was it adequate to the object in view in that case. We do not understand the Court to say that *quo warranto,* or an information of that nature had ever been resorted to in Maryland to remove one from a public office which he was illegally holding, for such is not the fact, as we have seen. All that was said by the Court in that case, in this connection, was for the purpose of meeting the suggestion that *quo warranto* was a legal remedy, and that, therefore, *mandamus* would not lie. We think a conclusive answer to this suggestion would have been that the proceeding suggested in lieu of *mandamus* had never been authorized by the Legislature to be used in such a case in Maryland." It seems, therefore, that *mandamus* is not only the appropriate remedy, but that, in this State, it is the only remedy by which one may be removed from an office to which he is not legally entitled. Learned counsel for the appellant adopting the view announced in *Kean* v. *Rizer,* 90 Md. 507, that if the appellant was disqualified his election was void, and relying upon the provisions of section 105 of the Charter, requiring the Mayor and City Council to fill vacancies "in the office of Mayor or any Councilman," contend that the petition should have been filed against the Mayor and City Council to compel them to fill the vacancy. But assuming, without so deciding, that the Court could in such a proceeding determine that a vacancy exists and order the Mayor and City Council to fill it, it could not give a judgment of ouster against the appellant. The relief here sought is the removal of the appellant from the office, and the appellees cannot be

denied the writ of *mandamus* to compel him to vacate the office on the ground that there is another remedy unless that remedy is specific and adequate. If, as contended by counsel for the appellant, *mandamus* cannot be resorted to to oust the appellant, there is no force in the suggestion that he should be made a party to proceedings against the Mayor and City Council. On the other hand, if *mandamus* is the appropriate proceeding to remove the appellant, we see no reason for proceeding against the Mayor and City Council, who will, we must assume, proceed to discharge their duty as soon as the appellant is removed.

2. Without stopping to discuss or consider the many reasons that might be assigned in support of the right of a citizen and taxpayer of a municipal corporation to the proper proceeding to remove a municipal officer who was not legally elected, we think the second question presented by the record is put at rest by the decision in *Pumphrey* v. *Baltimore,* 47 Md. 145. In that case the appellant filed a petition for a *mandamus* against the Mayor and City Council of Baltimore to compel the City "to take charge and possession of the bridge over Gwynn's Falls" as required by the Act of 1876, and CHIEF JUDGE BARTOL, in deciding the question we are now considering, said: "The position maintained by the appellee is, that the duty imposed is of a public nature, which can be enforced only by a proceeding in the name of the State instituted by the proper officer, the Attorney-General, and that a private person has no standing in Court, or any right to sue out the writ of *mandamus*. In this case the petitioner sets out the particular facts and circumstances which are supposed to show the special and particular manner in which the appellant is aggrieved, by the appellee's failure to perform the duty imposed by the Act of 1876."

"We deem it unnecessary to go into an examination of that part of the petition, because we are of opinion that to entitle the appellant to the remedy here sought, it is not in-

cumbent on him to show any personal interest in the matter different from that of any other citizen."

"We are aware that there is some conflict in the decisions on this question, but after examining the cases, we concur in what has been said by JUDGE STRONG, speaking for the Supreme Court in *R. R. Co.* v. *Hall,* 91 U. S. 355, that 'there is a decided preponderance of American authority in favor of the doctrine, that private persons may move for a *mandamus,* to enforce a public duty, not due to the government as such, without the intervention of the government law officer.' "

The same view is expressed in *High on Ext. Legal Rem.,* sec. 431 (2nd ed.), and in 23 *Am. & Eng. Ency. of Law,* 618 (2nd ed.), it is said; referring to *quo warranto* proceedings: "Any citizen and taxpayer of a municipal corporation may maintain the proceeding to try the title to an office under the municipality and to oust an unlawful incumbent. This has been held in regard to the office of alderman or member of the common council or municipal assembly."

Counsel for the appellant rely upon *Rizer's case* as announcing a contrary view. We do not so understand the decision in that case. The Court was construing the provisions of sections 52 and 58 of the Charter of Cumberland, and held that the disqualifications provided by section 58 were disqualifications arising after an election, and that the *special proceeding* authorized by that section were intended to apply only to cases of disqualification under that section. The question we are here considering, does not appear to have been discussed by counsel or considered by the Court in that case.

3. This brings us to the third and the more important question. Counsel for the appellant, in their carefully prepared brief, have cited many cases holding that where the words of the statute or constitution are, "no person shall be eligible to the office," or "no person shall hold the office," the qualifications relate to the time of qualifying and not to the time of

election.  If the Charter of Cumberland simply provided
that each councilman must be the owner of property to the
value of $500.00, "the taxes on which shall not be in ar-
rears," or that no one shall be eligible to the office of city
councilman unless he owns property to the value of $500.00,
"the taxes on which shall not be in arrears," the authorities
referred to would be justly entitled to great weight.  Upon
the same principle, if the Charter provided that each council-
man shall be thirty years of age, the cases cited would support
the view that it meant that he must be thirty years of age at
the time he qualified, but no such contention could be made
if the statute, instead of simply providing that a councilman
shall be thirty years of age, said he shall be thirty years of
age *at the time of his election.*  Section 100 of the Charter
is as follows: "The Mayor shall be not less than thirty years
of age, and each of the said four councilmen shall be not
less than twenty-five years of age, at the time of their elec-
tion; they shall each of them be citizens of the United States,
and for five years immediately preceding their election, resi-
dents of the City of Cumberland.  The Mayor shall be the
*bona fide* owner of property to the value of not less than one
thousand dollars ($1,000), and assessed for the same on the
tax books of the said city at the time of his election and for
two years next prior thereto, the taxes on which shall not be
in arrears; each councilman shall be the *bona fide* owner of
property to the value of five hundred dollars ($500), and as-
sessed for the same on the tax books of the said city at the
time of their election and for two years next prior thereto,
the taxes on which shall not be in arrears."  Here we have an
age, residence and property qualification for the Mayor and
City Councilmen.  It is clear that the age and residence qual-
ifications relate to the time of the election, and it is not de-
nied that a councilman must, at the time of his election, be
the owner of property to the value of five hundred dollars.
But the statute does not stop there.  It requires that he shall
be the *bona fide* owner of the property; that he shall be as-

sessed for the same at the time of the election and for two
years prior thereto, and that the taxes thereon shall not be
in arrear.   These provisions of section 100 are dealing with
a property qualification at the time of the election.   The
words "on which" necessarily refer to the property required
to be owned at the time of the election, as no other property
is mentioned, and for the same reason the words "shall not
be in arrears," must refer to the only time mentioned in the
preceding portion of the paragraph.   The natural meaning
of the words "the taxes on which shall not be in arrears," in
the connection in which they are used, is that the taxes shall
not be in arrear at the time of the election.   The property,
and the only property, referred to in the statute is the prop-
erty he is required to own at the time of his election, and the
only time mentioned is the time of the election, and it would
be giving the language used a meaning entirely foreign to the
subject with which the section is dealing, to wit, a property
qualification at the time of the election, and one not war-
ranted by anything in its provisions, to hold that it refers to
some other property and to a different time.   This construc-
tion is in harmony with the other qualifications provided by
section 100, all of which relate to the time of the election,
and which clearly indicate that the framers of the Charter
did not have any other time in mind.

Section 52 of the old Charter provided that, "Each and
every member of the City Council shall be the *bona fide*
owner, in his own right, of property to the amount in value
of five hundred dollars, and assessed for the same on the
books of the said city at the time of his election and for the
year next prior thereto, the taxes on which shall not be in
arrears," and in *Rizer's case* this Court, referring to sections
52 and 58 of that Charter, said: "The statute apparently
deals with two classes of disqualifications—one in which the
disqualification of a candidate occurs prior to an election and
the other a disqualification during the time or term for which
one is elected."   The section which the Court in that case

referred to as providing the qualifications of a candidate prior to an election is section 52, which contains practically the same provisions in regard to the property qualifications as is contained in section 100 of the present Charter. We think the meaning of the statute is that a councilman must, at the time of his election, be the owner of property of the value mentioned, on which the taxes are not in arrear, and that if the taxes are in arrear at the time of the election, he does not possess the qualifications required by the Charter.

4. The answer admits that the taxes were in arrear on the day of the election, and for several days thereafter, but the appellant insists that his effort and readiness to pay them at three o'clock in the afternoon of the day of the election, relieved him of the disqualification. Granting that the matters and facts set up in the answer are equivalent to payment of the taxes at three o'clock in the afternoon of election day, the question presented is, would payment at that time be sufficient? The appellant relies mainly upon the case of *State* v. *Berkeley,* 140 Mo. 184. In that case the law provided that "no person shall be elected or appointed to any office who shall at the time be in arrears for any unpaid city taxes," and the Court held that payment of his taxes at nine o'clcok in the morning of election day rendered the candidate eligible to the office of City Attorney. This case is undoubtedly in point, but the case of *Hatcheson* v. *Tilden et al.,* 4 H. & McH. 279, holds just the opposite. In the latter case the Court was dealing with the provisions of the Constitution of 1776, which provided: "No person to be eligible to the office of sheriff for a county but an inhabitant of said county, above the age of twenty-one years, and having real and personal property in the State above the value of one thousand pounds current money; the justices aforesaid shall examine the ballots, and the two candidates properly qualified, having in each county the majority of legal ballots, shall be declared duly elected for the office of sheriff for such county, and returned to the governor and council, with a certificate of the

number of ballots for each of them." Suit was brought against the judges of the election, and the declaration stated "that the plaintiff was a candidate for the sheriff's office, and had the necessary qualifications according to law; that he had a majority of legal votes. Nevertheless the defendants, etc., refused to return him as sheriff elect," etc. "It appeared on the trial of the cause, that the plaintiff had 453 votes, Jones 443, and Hall 270. That the plaintiff received the amount of real and personal property required by the Constitution, on the third day of the election, and not before. That the two other candidates had acquired it previous to the election. The defendants made a special return on the 8th of November, 1794; but the Governor and Council refused to receive the return, and sent it back as informal, declaring that the defendants were the sole and exclusive judges of the necessary qualifications. Upon which a second return was made, in which Jones and Hall were declared duly elected for the office of the sheriff of the county of Kent." CHASE, CH., J., in disposing of the case, said: "The proper qualifications required by the Constitution are, that the candidate shall, at the time he is voted for, be an inhabitant of the county, above twenty-one years of age, and have real and personal property within the State above the value of 1,000 pounds.* * * All votes given for a candidate, not having such qualifications, are to be thrown away and rejected as having no force or operation in law. The plaintiff can only be entitled to such votes as were given after he received the necessary qualifications, all votes in his favor previous being illegal and void."

And in *Rizer's case* the intimation of the Court is that the qualifications provided by section 52 were qualifications of a candidate "prior to an election." The question here, however, as in other cases, involves the construction of the law under which the election was held, and we agree with the learned Judge below, that the charter evidences the intention of its framers that only those candidates who possess the required qualifications should be voted for at the election.

Section 100, when construed in connection with section 97, can have no other meaning. What could be the object of requiring the candidates for nomination at the primary election, before their names go on the ballots, to swear that they are qualified to hold the office, except to eliminate from the primary contest those who do not possess the required qualifications, and to thereby secure for the final election candidates having the requisite qualifications? The obvious purpose of these provisions is to secure to the voters or electors the right to vote for those qualified under the charter for the offices for which they are candidates, and it would defeat the object of the law to hold that a candidate may, during the last hour of the election, after nearly all of the votes have been cast, and the majority of the electors have made their selection, remove his disqualifications. We therefore hold, that under the provisions of the charter, payment of his taxes at 3 o'clock in afternoon of election day, would not have removed the disqualification of the appellant.

5. In regard to the defense that the pending election contest between the appellee Hirsch and the appellant is a bar to relief in this case, it is only necessary to say that the appellee Devecmon is not a party to those proceedings, and that he cannot, in that case, obtain the relief here sought. In order that other proceedings may be a sufficient answer to the petitioner's prayer for a *mandamus,* it must appear that the *petitioner* can obtain full and adequate relief in such proceedings, and it is not sufficient that in a suit pending between *one* of the petitioners and the respondent, involving different issues, the judgment may indirectly and ultimately bring about the same result sought to be accomplished by the writ.

The further defense that one of the petitioners was induced to file the petition by malice and ill-will, and that the petition was filed for the purpose of embarrassing the appellant in the conduct of his office, is not a sufficient answer to the petition in this case. The writ is issued in the sound dis-

cretion of the Court, and in a case involving only private interests, the Court would no doubt refuse to lend its aid in furtherance of a malicious purpose and where no substantial good could be accomplished. But in this case the writ is sought to compel the performance of a duty to the public, and not to enforce a private right, and relief should not be denied because one of the petitioners was prompted to file the petition by personal ill-will.

Finding no error in the rulings of the Court, the order must be affirmed.

*Order affirmed with costs.*