# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1881.

CHARLES R. HARMAN *vs.* SPRIGG HARWOOD, Clerk.
SAME *vs.* SAME.

*Constitutional Law—Section* 15 *of Article* 2, *of the Constitution—Executive.*

Under section 2 of the Act of 1874, ch. 490, during the regular session of the General Assembly of 1880, H. was nominated by the Governor, and by and with the advice and consent of the Senate, was appointed "Register of voters for the fourth election district of Anne Arundel County," for two years. Charges having been preferred against H., the Governor, after having proceeded in the manner prescribed by sections 13, 14 and 15, of Article 42 of the Code, passed an order on the 22nd day of August, 1881, removing H. from office, for official misconduct, and appointed L. in his place. HELD:

That under the provisions of section 15 of Article 2 of the Constitution, the Governor had the power to remove H. from office for incompetency or misconduct, and to appoint L. his successor.

The term "Executive" as employed in section 15, of Article 2 of the Constitution, is not to be understood as meaning the Governor alone; it includes appointments by the Governor with the co-operation of the Senate.

APPEALS from the Circuit Court for Anne Arundel County.

The cases are stated in the opinion of the Court.

The causes were argued before BARTOL, C. J., MILLER, ROBINSON and IRVING, J.

*John Ireland*, and *J. Upshur Dennis*, for the appellant.

Section 15 of Article 2 of the Constitution, under which the Governor attempted to remove this complainant from his office as Register, only gave him power to remove those officers who derive the title to their offices by appointment from him alone, and does not embrace those who derive their title by the joint act of the Governor and Senate—who are nominated by the Governor, and appointed by and with the advice and consent of the Senate.

This provision of section 15 is to be construed strictly, not only because it is in its nature a penal provision, under which a man is to be deprived of his office, and to have the stigma of official misconduct fixed upon his good name; but in obedience to that broader rule of construction in constitutional law, which declares that while any provision as to the Legislature operates as a *limitation*—they representing the sovereignty of the people and retaining all power save where it is limited by the Constitution—yet every provision in regard to the other departments of government operates as a *grant*, and no power exists except such as is given either in express words or by necessary implication. This provision is a *grant* of power to the Governor; he has no authority outside of it; and the words of the grant are the full measure of the power. Anything beyond its words is as much denied him, as if it was in express terms forbidden. *Field vs. People*, 2 *Scam.*, (*Ill.*)

Construing this provision by this rule, there would seem to be no doubt about the question. The Governor is authorized to remove those officers who "receive their appointment from the Executive," and those alone. Who the "Executive" is, is well known; besides, the Constitu-

tion itself, in this very same Article, defines the term. It provides in section 1, that the "*Executive* of this State shall consist of a Governor," &c. The same Article which uses the term, defines its meaning beyond a doubt. Now, these Registers do not receive their appointment from the Executive, but from the Executive *and Senate.* The Governor nominates, the Senate advises and consents by a resolution of confirmation, and the joint act of both constitutes the appointment. The action of the Senate is as essential as the nomination by the Governor; both must concur before the title is complete. This point—that in such a case the appointment is not from the Governor, but an appointment by the Governor and Senate—was first decided by the Supreme Court in *Marbury vs. Madison,* 1 *Cranch,* 139, and has always been recognized by all writers on constitutional law, and has received the sanction of our own Court of Appeals. *Watkins vs. Watkins,* 2 *Md.,* 341; *Pomeroy on Constitutional Law,* 492.

Now we have in the Constitution a class of officers who do receive their appointment from the Executive alone. They are those provided for in section 11, to fill vacancies during a recess of the Senate, together with those who may be thus appointed by a special law creating the office. Indisputably their appointment is from the Executive alone, and it is to this class to whom the provisions of section 15 are meant to apply; and that application fully gratifies the words of the section.

The Constitution itself recognizes this distinction. It repeatedly speaks of the two classes of officers, and each time it describes them by apt and appropriate words. When it speaks of the first class, it describes them as those appointed by the Governor and Senate; when it speaks of the second class, it describes them as those appointed by the Governor.

Section 10 prescribes how the first class shall be appointed; section 11 prescribes how the second class shall be appointed.

Section 12 marks the distinction clearly between the two classes. It recognizes that as to the first class, the Governor's function is to nominate, while as to the second class he appoints, and he alone.

Sections 13 and 14 likewise describe the first class as those appointed by the Governor and Senate; in fact, wherever that class is meant in the Constitution, they are always described by that peculiar phraseology—those "appointed by the Governor and Senate,"—and no other words are ever used to describe them; and whenever this second class is intended, different words, and words as accurately descriptive, are always used.

The reason for restricting the Executive's power of removal to those who are appointed by him is plain, and the policy is wise. Where officers are appointed by him alone—where he has to act upon his own information and opinion—where he has not the benefit of the assembled wisdom of the Senate to instruct him, and where consequently the entire responsibility for the appointment rests upon his shoulders, it was right that he should have the power of removal. Having the responsibility, he should have the power of protecting himself. But when an officer is appointed by the Governor and Senate—when the latter has by its formal resolution said the man was a fit person to be named, and has advised his appointment, and it has thus become responsible for him, and he has become, to this extent, its appointee as well as the Governor's, it was never thought necessary or proper that the latter should have this unlimited right of removal, and thus be able at his will to set aside the deliberate action of the Senate.

But the history of this clause of our Constitution, and the circumstances under which it was adopted, settle this question beyond a doubt. The section, as it at present stands, was adopted by the Convention of 1867 and 1864, without discussion, and it was in the Convention of 1851 that it was, after debate, put into its present shape.

Harman *vs.* Harwood, Clerk.

Under the first Constitution of 1776, the power of the Governor to remove was indisputably limited to those officers who were appointed by himself. It gave the power of removal in cases where an officer was not appointed during good behaviour, but in the very next section it provided that all such officers should be appointed annually. The result was the Governor could only remove those who were appointed annually, and these were of his own appointment. *See Conventions of 1776, p.* 360, *secs.* 48 *and* 49.

When this provision came up in the Convention of 1851, the committee on the Executive Department reported it in terms which gave the right to remove all civil officers. Judge CHAMBERS, a most distinguished member of that Convention, at once attacked it, contending that it was too broad a power, and that the Governor should never be allowed, at his discretion, to remove those who derived their appointment from himself and the Senate. Governor Grason, who was chairman of that committee, contended for the power, and in order to make it free from doubt, he offered an amendment making it apply in terms "to those who are appointed by the Governor and Senate." This amendment, after quite a lengthy debate, was carried; and as the section then read, there could be no manner of doubt of the Governor's power to remove both classes of officers. No further debate took place; but subsequently, when the revisory committee on this branch of the Constitution, (of which committee Judge CHAMBERS was a member,) reported, they reported this section with these words: "those who are appointed by the Governor and Senate" *stricken out*, and in their place the words: "who receive their appointment from the Executive" were inserted; and this report was unanimously adopted, and the clause, as reported by them, was put in the Constitution of 1851, and taken from it by the Conventions of 1864 and 1867.

Thus it is seen that the Convention of 1851 had their attention called to this very distinction between these two classes of officers, and of the Governor's right of removal over them; this was the very point of the debate, and at first they determined he should have the power to remove those appointed by the Governor and Senate, and then afterward, upon maturer deliberation, they limited his power of removal to those who were appointed by the Executive. In the light of this history of the provision, how can it be contended that the words—those who "receive their appointment from the Executive,"—embrace also those who are "appointed by the Governor and Senate?" *Convention of* 1851, *vol. I, p.* 471, *et seq.*

*M. Bannon,* and *William H. Tuck,* for the appellee.

There is every reason, upon grounds of the highest public policy, looking to good government, and the faithful execution of the laws, as required by sec. 9, Art. 2, that public offices should be filled by competent and proper persons, and if the Governor does not possess this power, in the recess of the Senate, in cases of appointment made by the joint action of the Governor and Senate, there is no way by which many of the officers of the State could be removed, no matter how incompetent they might prove to be, or however guilty of misconduct in office. Many of them might be punished for misconduct, but not for incompetency; that however, would not include their removal, and the State would still suffer all the evil consequences of their incumbency.

There is not one officer known to the Constitution whose removal in case of necessity, is not provided for in one way or another. This 15th section was doubtless intended to provide, in general terms, for all officers that might be created by law, and which could not be specially anticipated in the Constitution.

It is upon this principle, as we think, that from the establishment of the General Government, the power of

appointment, whether by the President alone, or by the President and Senate, has been considered as embracing the right of removal and new appointment, and although the power has, at times, according to changes in parties, been questioned or denied, it has been exercised by every administration from Washington to this time.

In our Constitution, however, the exercise of the power is restrained by this section, and can be resorted to only in cases of incompetency and misconduct, so that, but for this cause, the Governor would have the power to remove and appoint, without restriction, under the 10th section of Art. 2. *Const. U. S., Art.* 2, *sec.* 2; *Nutes vs. Bradford,* 22 *Md.,* 170; *Collings vs. Tracey,* 36 *Texas,* 546; *Newson vs. Crocker,* 44 *Miss. State,* 353; *Regold's Case,* 5 *S. & R.,* 446; *People vs. Jewett,* 6 *Cal.,* 291; *Debris vs. Ruthinger,* 9 *Lou.,* (*Annual,*) 210; *Ewing vs. Thompson,* 43 *Penna. State,* 372; *Keenan vs. Perry,* 24 *Texas,* 258; *Bower Bank vs. Morris, Wallace C. C. R.,* 118; *Ex parte Hennan,* 13 *Peters,* 259; 2 *Story on Const., secs.* 1541, 1542, *note* 2, *page* 355, *as to removals by Presdent Jackson;* 1 *Kent Comm.,* 287, 288, *margin.*

It is altogether too narrow to construe the word *Executive* as meaning the Governor alone, so as to restrict the exercise of this power to officers appointed by him, without the Senate. There are no such officers of a grade worthy to have been noticed in the Constitution to the exclusion of others of higher degree. We know of none, except a few employés about the public buildings, who have no public duties to perform, and are in no sense officers of the State. They do not hold "for a term of years," and may be changed at any time by the Governor, for, or without cause, and without trial. The framers of the Constitution must have meant this section 15, to apply to others than that class of employés.

According to the view of the appellant, there would be a difference as to the exercise of this power over civil and

military officers.   By section 10, all civil and military offi-
cers are to be appointed by the Governor and Senate.   In
that respect, they stand on the same level.   But, if our
interpretation be not correct, the Governor can suspend or
arrest, and in a given contingency, remove military offi-
cers, and yet have no power over those holding civil
appointments conferred by the same authority as militia
appointments.   If there is reason for any difference, it
lies on the other side, for it is more important to have
good civil officers, than it is to have a competent militia.
He would have the power, and it would be his duty, to
bring under military discipline, officers in the militia, from
the highest to the lowest, for the gravest and for the most
insignificant offences, and stand by silent and inactive,
while the men holding the most important civil place in
the gift of the Governor and Senate, might be utterly
incompetent, or daily rioting in corruption and misconduct
of every kind, squandering the public moneys, if he had
any under his charge, or otherwise damaging the highest
public interests, without the power to interfere.   The
Convention did not mean this; the people in voting for
the Constitution, meant no such thing.   The term *Execu-
tive* was used as a short way of saying "the Governor, by
and with the advice and consent of the Senate," as em-
ployed in other parts of the Constitution.

It is clear that the Convention and people contemplated
removal of such officers—such as might be appointed by
the Governor and Senate.   By section 13, all civil officers
appointed by the Governor and Senate, are to hold their
offices for two years, *unless removed from office.*   Now,
who is to remove them?   Can it be doubted that this
question is answered by the last clause of section 15?   No
provision is elsewhere made, and taking the two sections
together, effect is given to both, and the public interests
protected against incompetency and misconduct of persons
holding public trusts.

Again, by whom are appointments made? By the Governor and not by the Senate. He nominates, but cannot appoint without the advice and consent of the Senate, and when these are made known to him, he issues the commission, which is the appointment. If the Senate advises and consents, the appointment is thereby made. The Governor is not even then bound to issue the commission. We do not suppose he could be compelled by mandamus to do so. He might withdraw the nomination and make another. In the case of *Marbury vs. Madison,* 1 *Cranch,* 139, it was decided that a commission, signed and sealed, gave the right to the office without delivery, but it has never been held, as far as we know, that the advice and consent of the Senate to a nomination confers the office or the right to the office. If this view be correct, then if the word Executive in this section 15, means the Governor only, he had the power to make the removal in this case, because all Executive appointments are made by him, whether they be with or without the action of the Senate.

BARTOL, C. J., delivered the opinion of the Court.

These appeals have been argued together and present the same question. The exigency of the case requiring an early decision, the Court, immediately after the argument, proceeded to consider the same, and rendered its decision and judgment thereon, without filing any written opinion; which we now proceed to do, assigning briefly the reasons for the decision rendered.

Under the provisions of the *Act of* 1874, *ch.* 490, *sec.* 2, the appellant, during the regular session of the General Assembly in 1880, was nominated by the Governor, and appointed by and with the advice and consent of the Senate, "Register of voters for the fourth election district of Anne Arundel County"—for two years. Charges having been preferred against him, the Governor, in the exercise of the power conferred on him by the Constitution,

*Art.* 2, *sec.* 15, after having proceeded in the manner prescribed by the Code, *Art.* 42, *secs.* 13, 14, 15, *on the 22nd day of August* 1881, passed an order removing him from office, for official misconduct, and appointed John Lowman in his place.

The appellant, maintainining that the Governor had not the constitutional power to remove him, and claiming that he is, notwithstanding the Governor's action, still legally entitled to hold the office, and exercise its functions, filed a bill on the equity side of the Circuit Court for Anne Arundel County, praying for an injunction to prevent the appellee, as clerk, from delivering to John Lowman the books of registration, &c. A temporary injunction was issued as prayed, which was upon hearing dissolved, and from the order dissolving the same, one of these appeals was taken.

The other appeal was taken from an order of the same Court, refusing to grant a *writ of mandamus*, upon the petition of the appellant, requiring the appellee to deliver the books of registration to the petitioner.

The decision of the appeals depends upon the true construction of the 15*th section of Art.* 2, of the Constitution. *Section* 9, of the same Article, provides that the Governor "shall take care that the laws are faithfully executed." In order to enable him to fulfill this duty, he is clothed with large and important powers. *Section* 10 provides that "he shall nominate, and by and with the advice and consent of the Senate, appoint all civil and military officers of the State, whose appointment, or election, is not otherwise herein provided for; unless a different mode of appointment be prescribed by the law creating the office." *Sections* 11, 12, 13, 14, provide for filling vacancies; and *Section* 15 provides, "The Governor may suspénd, or arrest any military officer of the State for disobedience of orders, or other military offence; and may remove him in pursuance of the sentence of a Court-Martial; *and may*

*remove for incompetency, or misconduct, all civil officers who received appointment from the Executive for a term of years."*

It is unnecessary to discuss the question whether, apart from *section* 15, the power to remove, at will, civil officers appointed by him with the co-operation of the Senate, would belong to the Governor as incidental to the power of appointment. If such a power could be construed to exist, it is very clear that the effect of the 15*th section* is to limit and restrain its exercise, and that the power of removal, in cases coming within the operation of that section can be exercised by him only *for "incompetency or misconduct."*

The *Code, Art.* 42, in the sections to which we have referred, carefully prescribes and directs the mode by which the Governor is required to exercise this delicate and important power, by providing for notice to the party complained against, an opportunity for defence, the examination of witnesses, and a full hearing of the case. This proceeding was had in the case of the appellant.

The single question raised in the argument is whether the appellant was an officer liable to be removed for cause under *section* 15 *of Art.* 2. It is contended on his behalf, that the provisions of that section apply only to such civil officers as have been appointed by the Governor alone, and have no application to the appellant, who was appointed by the Governor with the co-operation of the Senate. This argument is based upon the words *"all civil officers who received appointment from the Executive for a term of years."*

If this construction were adopted, it would restrict the operation of the section within very narrow limits and entirely defeat its purpose; for under the Constitution and laws, very few officers are appointed by the Governor, without the co-operation of the Senate, and these are mostly temporary appointments merely for the purpose of

filling vacancies. But in our judgment this construction is not sound. The term *Executive,* as used in the section, is not to be understood as meaning the Governor alone, for appointments made by him, by and with the advice and consent of the Senate, are known and properly designated as "*executive* appointments." The Senate, in its action upon the nominations of the Governor, is really performing executive functions. But if the word *executive* is to be understood to mean the Governor, the same result would follow; for in all such cases it is the Governor from whom the appointment is received, although to confirm it, the approval of the Senate is required.

We have been referred to the 13*th and* 14*th sections,* where such appointments are said to be made by "the Governor and Senate;" but the language of the Constitution must not receive a narrow and technical construction. It is not every where uniform and consistent in this respect. In *section* 11, referring to offices filled by the Governor's appointment, with the co-operation of the Senate, the language used is, "any office which the Governor has power to fill." So in *Art.* 7, providing for the appointment of *Librarian* and *Commissioner of the Land Office,* which are made by the Governor, by and with the advice and consent of the Senate; the section provides, in each case, that the officer shall hold his office "*during the term of the Governor by whom he shall have been appointed.*"

We do not entertain any doubt, that according to the true construction of *Art.* 2, *sec.* 15, of the Constitution, the Governor possessed the power to remove the appellant from office for incompetency or misconduct, and therefore have affirmed the orders of the Circuit Court.

*Orders affirmed.*