J. WILMER JOHNSON *v.* WILLIAM W. DUKE
SAME *v.* CLYDE L. WEST

[Nos. 62 and 63, October Term, 1941.]

*Decided February 4, 1942.*

The causes were heard on original papers and argued before ˙Bond, C. J., Sloan, Johnson, Delaplaine, Collins, Forsythe, and Marbury, JJ.

Walter H. Buck and R. Contee Rose, with whom was Eben F. Perkins on the brief, for appellant in each case.

William C. Walsh, Attorney General, and Robert E. ·Clapp, Jr., Assistant Attorney General, as amicus curiae, with whom were Benjamin Hance and Arthur W. Dowell on the brief, for the appellees.

Delaplaine, J., delivered the opinion of the Court.

J. Wilmer Johnson, a citizen and taxpayer for Calvert County, filed suits for mandamus to compel William W. Duke and Clyde L. West to vacate their offices of justice of the peace for Calvert County on the ground that they were ineligible under the Constitution of Maryland for their recess appointments.

Duke and West were first appointed by Governor Herbert R. O'Conor when the Act establishing the Trial Magistrates System took effect on June 1, 1939, during recess of the Legislature. Duke was designated as justice of the. peace at large to sit as trial magistrate at Prince Frederick and such other places in the county as the law and public business required; West was designated to sit at North Beach and Chesapeake Beach. Acts of 1939, Ch. 720; Code, 1939, Art. 52, Secs. 93, 100; Woelfel v. State, 177 Md. 494, 9 A. 2d 826. On January 10, 1941, at the regular biennial session of the Legislature, Governor O'Conor included the names of Duke and West among the recess appointments submitted to the State Senate, and both were disapproved by that body.

On February 19, 1941, the Governor nominated to the Senate his list of appointments for the two-year term beginning on the first Monday of May, 1941. In this list he appointed Ramsay Hodges trial magistrate at Prince Frederick and elsewhere, and D. Kern Robinson trial magistrate at North Beach and Chesapeake Beach. The Senate rejected Hodges, but confirmed Robinson. In April, after adjournment of the Legislature *sine die,* the Governor appointed Duke to fill the vacancy caused by the Senate's rejection of Hodges; and, Robinson, having declined his appointment, appointed West to fill the vacancy in that office.

The issue in these cases is whether justices of the peace come within the constitutional inhibition that no person, after being rejected by the Senate, shall be appointed to the same office during the recess of the Legislature. The respondents answered (1) that their recess appointments did not require senatorial confirmation, (2) that Governor O'Conor's action in sending their names to the Senate was unnecessary and nugatory, and (3) that the Senate's unfavorable action thereon did not amount to a rejection as contemplated by the framers of the Constitution. The court overruled Johnson's demurrers to the answers, and judgment was entered in each case in favor of the respondent for costs. The appeals were taken from those judgments.

In this State the law is clear that a citizen and taxpayer of a county is entitled to apply for a write of mandamus to attack an incumbent's title to a public office of the county and to oust him therefrom on the ground of his disqualification, even though the petitioner is not a contestant for the office. *Hummelshime v. Hirsch,* 114 Md. 39, 79 A. 38; *Carey v. Jackson,* 165 Md. 472, 169 A. 922. It is also unquestioned that where the facts in a suit for mandamus are undisputed, and the pleadings raise solely a question of law, it is proper for the court, upon overruling a demurrer to the answer, to enter a final judgment in favor of the respondent for costs, without giving the petitioner an opportunity to

plead over. *Good v. Board of Police Comrs. of Baltimore City*, 137 Md. 192, 112 A. 294, 13 *A. L. R.* 1164.

The sections of the Constitution before us for consideration are as follows:

Article 2, Section 11: "In case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the Legislature, or until some other person is appointed to the same office, whichever shall first occur; and the nomination of the person thus appointed during the recess, or of some other person in his place, shall be made to the Senate within thirty days after the next meeting of the Legislature."

Article 2, Section 12: "No person, after being rejected by the Senate, shall be again nominated for the same office at the same session, unless at the request of the Senate; or be appointed to the same office during the recess of the Legislature."

Article 2, Section 13: "All civil officers appointed by the Governor and Senate shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless removed from office), and until their successors, respectively, qualify according to law * * *."

Article 4, Section 42: "The Governor, by and with the advice and consent of the Senate, shall appoint such number of justices of the peace * * * as are now or may hereafter be prescribed by law * * *."

Article 4, Section 43: "In the event of a vacancy in the office of a justice of the peace, the Governor shall appoint a person to serve as justice of the peace for the residue of the term * * *."

Under the Constitution of 1851, justices of the peace were elected by the qualified voters and held their offices

for two years, and in case of a vacancy the Governor was empowered to appoint someone to serve until the next regular election of such officers. Constitution of 1851, Art. 4, Sec. 19. In 1857 Governor Ligon appointed John Owens to fill a vacancy in one of the offices of justice of the peace in Cecil County; and Governor Hicks in 1858 appointed to the same office Joseph P. Cantwell, who was confirmed by the Senate. It was decided by the Court of Appeals that Owens was entitled to hold the office until the next election without the necessity of senatorial confirmation. The court held in that case: "Where the Constitution speaks in plain language, in reference to a particular matter, we have no right to place a different meaning on the words employed, because the literal interpretation may happen to be inconsistent with other parts of the instrument in relation to other subjects. Courts are sometimes required, in ascertaining the sense in which certain words may have been used, to give them effect according to the intent gathered from the whole instrument, but that rule cannot be admitted here. The language is too plainly written to receive the construction, that, although the Constitution declares that in the event of a vacancy in this office the Governor shall fill it, the convention and people designed that he should do so only with the concurrence of the Senate." *Cantwell v. Owens*, 14 Md. 215, 226. The appellant argued that this decision should no longer be followed because of the fact that justices of the peace are now appointed originally by the Governor, and therefore such recess appointments should be placed in the same general category with his other recess appointments. In the Constitutional Convention of 1864, the members voted to retain the general provision empowering the Governor to fill a vacancy by appointing some one to serve "till the end of the next session of the General Assembly." 2 *Debates of 1864*, 1327; Constitution of 1864, Art. 2, Sec. 14. They also decided to abolish elections for justices of the peace, and to lodge the power of making original appointments of justices of the

peace in the hands of the Governor with the consent of the Senate. 3 *Debates of 1864,* 1687; Constitution of 1864, Art. 4, Sec. 47. But they further decided by separate vote to empower the Governor (without any mention of the Senate) to fill any vacancy in the office of justice of the peace "for the residue of the term." 3 *Debates of 1864,* 1686; Constitution of 1864, Art. 4, Sec. 48. This action was taken without any question of the clear distinction drawn by the Court of Appeals between the Governor's recess appointments of justices of the peace and his other recess appointments. In the last Convention of 1867, the members agreed without debate to leave unchanged the provisions relating to justices of the peace. *Perlman's Debates of 1867,* 270.

It is an elementary rule of interpretation that effect should be given, if possible, to every section and clause of a written Constitution; and where there is a special provision in conflict with a general provision, the special provision should be given effect to the extent of its scope, leaving the general provision to control in cases where the special provision does not apply. *Manly v. State,* 7 Md. 135, 147; *People v. Field,* 66 Colo. 367, 181 P. 526; 11 *Am. Jur., Constitutional Law,* Sec. 55; 16 *C. J. S., Constitutional Law,* Sec. 25. For example, this court has held that the members of the Conventions of 1864 and 1867 did not intend justices of the peace to hold over, as other civil officers do, until their successors are appointed and qualified. Under the Constitution of 1851, justices of the peace were authorized to hold over until their successors were elected and qualified; but the hold-over clause was omitted in the later Constitutions. "With these facts before us," the court said, "it is unreasonable to assume that words similar to those found in the Constitution of 1851 * * * were unintentionally omitted from the Constitution of 1864, and also from the Constitution of 1867. On the contrary, we are rather forced to the conviction that the convention deliberately and intentionally made the distinction between justices of the peace and constables and other officers

provided for in the Constitution." *Claude v. Wayson,* 118 Md. 477, 487, 84 A. 562, 565.

While our present Constitution confers upon the Governor the power to fill a vacancy "in any office which the Governor has power to fill," the person so appointed is not entitled to hold the office beyond the close of the next session of the Legislature, and the Governor is required to inform the Senate of the appointment within thirty days after the commencement of that session. *Smoot v. Somerville,* 59 Md. 84, 89; *Sappington v. Slade,* 91 Md. 640, 48 A. 64. But in the event of a vacancy in the office of justice of the peace, the Governor is empowered to appoint a person to serve "for the residue of the term." Since the terms of all civil officers, except in cases otherwise provided for in the Constitution, commence on the first Monday of May next ensuing their appointment and continue for two years, a person appointed to fill a vacancy in the office of justice of the peace during recess of the Legislature is entitled to serve until the first Monday of May following the next session of the Legislature. Thus, by mandate of the Constitution, the tenure of office of a person holding a recess appointment as justice of the peace is different from that of other recess appointees. Chief Judge Bartol observed in 1882 that there were· some constitutional officers whose appoinments could lawfully be made by the Governor "without the cooperation of the Senate * * * merely for the purpose of filling vacancies." *Harman v. Harwood,* 58 Md. 1, 11, 12. In 1884 Chief Judge Alvey defined the Governor's appointive power more definitely in the following language: "Section 11 of Article 2 has reference exclusively to the power and manner of filling vacancies in the offices therein referred to; and the appointment by the Governor and the subsequent nomination to and confirmation by the Senate, must have reference alone to the limitation of the right to hold as designated in that section, and not to any other or different term of office." *Kroh v. Smoot,* 62 Md. 172, 176. We conclude that the members of the Constitutional Con-

vention did not intend to require the Governor to submit recess appointments of justices of the peace to the State Senate, since that body has no concurrent authority over such appointments.

The attorneys for the appellant stated that many Governors of Maryland, some of whom were contemporaries of the framers of the Constitution, submitted their recess appointments of justices of the peace to the Senate, and that Governor O'Conor was following a custom of his predecessors. It is a firmly established doctrine that a contemporaneous construction of an ambiguous constitutional provision or a practical construction, which has been acquiesced in for a long period of time may be a valuable aid in determining the meaning and intent of the Constitution in case of doubt. *Cohens v. Virginia,* 6 Wheat. 264, 418, 5 L. Ed. 257; *Levin v. Hewes,* 118 Md. 624, 641, 86 A. 233; 1 *Cooley, Constitutional Limitations,* 144-148. The doctrine is based upon the assumption that the contemporaries of the framers have claims to our deference on the question of interpretation, inasmuch as they enjoyed the best opportunities of learning the intention of the framers and the understanding of the people who ratified the instrument. *Ogden v. Saunders,* 12 Wheat. 213, 290, 6 L. Ed. 606, 632. But it is equally well settled that contemporaneous construction should be resorted to with caution and reserve, and can never be allowed to enlarge, restrict or contradict the plain meaning of the text. *Black, Interpretation of Laws,* Sec. 31. It is the sacred duty of the courts to preserve inviolate the integrity of the Constitution. Hence it would be a violation of their duty to treat the fundamental law as subject to modification except in in conformance with constitutional methods. *McPherson v. Blacker, Secretary of State,* 92 Mich. 377, 52 N. W. 469, 472, 16 *L. R. A.* 475, 31 *Am. St. Rep.* 587. Failure to exercise a power expressly granted by the Constitution does not destroy that power. In order that the doctrine of practical construction can be applied by the court, the construction must not result in any unconsti-

tutional usurpation. No acquiescence for any length of time can legalize a usurpation of power, where the people have plainly expressed their will in the Constitution and established judicial tribunals to enforce it. *Lawrence University v. Outagamie County,* 150 Wis. 244, 136 N. W. 619, 2 *A. L. R.* 465; 11 *Am. Jur., Constitutional Law,* Secs. 78, 80; 16 *C. J. S., Constitutional Law,* Sec. 32. While a long established custom of the Chief Executives of the State may be shown as an aid in interpreting the Constitution, the failure of the judiciary to acquiesce in that construction nullifies its effect. The Constitution of the State is a higher authority than any act or law of any officer or body assuming to act under it, for such an officer or body must exercise a delegated authority subservient to the basic law by which the delegation was made. In case of conflict the Constitution must govern, and the act or law in conflict with it must be held to have no legal validity. 1 *Story on the Constitution,* Secs. 406, 407; 1 *Cooley, Constitutional Limitations,* 149-151.

As the Senate's disapproval of the recess appointments of the justices of the peace did not disqualify them for subsequent appointments, the action of the court below in overruling the demurrers was proper. The judgment in each case will therefore be affirmed.

*Judgment in No. 62 affirmed, with costs.*

*Judgment in No. 63 affirmed, with costs.*