## PRESSMAN v. D'ALESANDRO, MAYOR OF BALTIMORE CITY, ET AL.

[No. 225, October Term, 1955.]

52

*Decided August 20, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, HENDERSON and HAMMOND, JJ.

*Hyman A. Pressman* for appellant.

*Thomas N. Biddison, City Solicitor of Baltimore,* with whom were *Edwin Harlan, Deputy City Solicitor,* and *Hugo A. Ricciuti, Assistant City Solicitor,* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This declaratory judgment proceeding was brought in the Circuit Court of Baltimore City by Hyman A. Pressman, a citizen and taxpayer of Baltimore, to invalidate two ordinances of the Mayor and City Council of Baltimore, which increase the salaries of Mayor Thomas D'Alesandro, Jr., Comptroller R. Walter Graham, Jr., and members of the City Council.

These officials were elected on May 3, 1955, for terms of four years, and took office on May 17, 1955. At that time the salaries for these offices per annum were: Mayor, $15,000; Comptroller, $10,000; President of the City Council, $6,500; Vice President of the City Council, $4,725; and members of the City Council, $4,200.

Ordinance 131, approved November 29, 1955, provides that for the year 1956 and thereafter the Mayor shall be paid an annual salary of $25,000, the Comptroller, $17,500, and the President of the City Council, $12,000.

Ordinance 157, the Ordinance of Estimates for 1956, approved December 7, 1955, appropriates the following salaries: Mayor, $25,000; Comptroller, $17,500; President of the City Council, $12,000; Vice President of the City Council, $7,000; members of the City Council, $6,500.

Complainant alleged that payments of the increases in salaries would violate the provision of the Constitution that the salary or compensation of any public officer shall not be increased or diminished during his term of office. He further alleged that Comptroller Graham would pay the in-

creased salaries out of the city's revenues unless restrained by the Court. He prayed the Court (1) to declare void that part of Ordinance 131 which increases the salaries of the Mayor, the Comptroller, and the President of the City Council during their present terms of office; (2) to declare void that part of Ordinance 157 which allocates the increases in the salaries of defendants; and (3) to restrain the Mayor and City Council and the Comptroller from paying to defendants the increases in their salaries during their present terms of office.

The Court, after hearing the testimony of August L. Heid, Assistant Budget Director, entered a decree declaring both ordinances constitutional and valid. From that decree complainant appealed to this Court.

Under the Uniform Declaratory Judgments Act, Code 1951, art. 31A, sec. 2, any person whose rights, status or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and obtain a declaration of rights, status or other legal relations thereunder, provided that there is no by-passing of an administrative agency. *Pressman v. State Tax Commission,* 204 Md. 78, 84, 102 A. 2d 821. The law is also established that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal or *ultra vires* and may injuriously affect the taxpayer's rights and property. *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482; *Reed v. McKeldin,* 207 Md. 553, 558, 115 A. 2d 281.

The decisive question in this case is whether the last clause of Article 3, Section 35, of the Constitution of the State of Maryland is applicable to the city officials of Baltimore. This section of our present Constitution of 1867, the language of which is identical to Section 23 of the Constitution of 1851 and Section 34 of the Constitution of 1864, reads as follows:

"No extra compensation shall be granted or allowed by the General Assembly to any public Officer, Agent, Servant or Contractor, after the service shall

have been rendered, or the contract entered into; nor shall the salary or compensation of any public officer be increased or diminished during his term of office."

This Court has stated that a position is a "public office" where it has been created by law and casts upon the incumbent duties which are continuing in their nature and not occasional and call for the exercise of some portion of the sovereignty of the State. *Buchholtz v. Hill,* 178 Md. 280, 13 A. 2d 348. It is conceded that defendants are "public officers" within the meaning of the Constitution.

It is also clear that the provision in Article 3, Section 35, that the salary or compensation of any public officer shall not be increased or diminished during his term of office is comprehensive and should be interpreted broadly to promote its policy, and accordingly it is applicable not only to offices created by the Constitution but also to offices created by the Legislature. *Calvert County Com'rs v. Monnett,* 164 Md. 101, 105, 164 A. 155, 156, 86 A. L. R. 1258; *State, to Use of Lane v. Dashiell,* 195 Md. 677, 693, 75 A. 2d 348. Thus it has been specifically held that this provision applies to State's Attorneys and County Commissioners. *County Com'rs of Anne Arundel County v. Goodman,* 172 Md. 559, 561, 192 A. 325.

It was contended by defendants that Section 35 of Article 3 of the present Constitution does not apply to public officers of the City of Baltimore because (1) Article 11 of this Constitution, entitled "City of Baltimore," adopted at the same time as Article 3, empowers the Legislature to make such changes in the compensation of the Mayor and members of the City Council of Baltimore as it may deem best; (2) this power presumably includes the right to increase or decrease the compensation of such officers during their terms of office; (3) the Legislature transferred this power to the voters of Baltimore in accordance with the Home Rule Amendment of the Constitution, Article 11A, entitled "Local Legislation"; and (4) the voters approved the provision of the Charter pursuant to which the two challenged ordinances were enacted.

Section 1 of Article 11 provides that the Mayor of the City

of Baltimore "shall have such qualifications, receive such compensation, discharge such duties, and have such powers as are now, or may hereafter be prescribed by Law."

Section 2 provides that the City Council of Baltimore "shall consist of such number of members, having such qualification, receiving such compensation, performing such duties, possessing such powers, holding such terms of office, and elected in such manner, as are now, or may hereafter be prescribed by Law."

Section 9 provides: "The General Assembly may make such changes in this Article, except in Section 7th thereof, as it may deem best; and this Article shall not be so construed or taken as to make the political corporation of Baltimore independent of, or free from the control which the General Assembly of Maryland has over all such Corporations in this State."

The Home Rule Amendment was submitted to the voters of the State by Chapter 416 of the Acts of 1914, and was ratified at the general election in November, 1915. This Amendment provides that after the adoption of a Charter, the Mayor and City Council of Baltimore shall have full power to enact local laws, including the power to repeal or amend local laws enacted by the General Assembly, upon all matters covered by the express powers granted. Md. Constitution, art. 11A, sec. 3.

In pursuance of that Amendment, the Charter of Baltimore City was adopted in 1918. In 1920 the Legislature expressly granted to the voters of the City of Baltimore the power to make changes in Sections 1 to 6, inclusive, of Article 11, "as they may deem best." Acts 1920, ch. 555, Baltimore City Charter, 1949 Ed., sec. 6(41).

It was argued by defendants that the Constitutional Convention of 1867, by inserting in the Constitution a separate Article dealing with the City of Baltimore, set up a separate and distinct framework for the government of this political subdivision; and that this Article, which granted to the Legislature the power to change the compensation of the Mayor and members of the City Council of Baltimore, is free from

the restraint of Article 3, Section 35, although it is still applicable to the public officers in other subdivisions of the State.

It is important to keep in mind that the City of Baltimore is recognized by the Constitution of 1867, as it was also by the Constitutions of 1851 and 1864, as a separate political entity similar in character to the several counties, and that it is liable like the counties to the control of the Legislature, except in so far as may be forbidden by the Constitution. *City of Baltimore v. State ex rel. Board of Police of City of Baltimore,* 15 Md. 376, 491, 74 Am. Dec. 572; *City of Baltimore v. Gorter,* 93 Md. 1, 6, 48 A. 445. Therefore the Legislature, by virtue of Article 11, Section 9, of the Constitution, possesses the same power over the Charter of the City of Baltimore, with the sole exception relating to the incurring of indebtedness, as it has over the Charter of any other city or town in the State. *Niles, Maryland Constitutional Law,* 320.

We are convinced that, since the State Constitution does not cut off the City of Baltimore from the power of the State Legislature, the mere fact that there is a separate Article in the Constitution prescribing the framework of government for the City of Baltimore does not give the City immunity from the constitutional restraints upon the Legislature and the municipal corporations of Maryland. We are strengthened in the opinion that the grant of power to the Legislature to change the compensation of the Mayor and members of the City Council does not warrant the inference that Section 35 of Article 3 is not applicable to public officers of Baltimore by the fact that this provision of the Constitution applies to State's Attorneys and County Commissioners, for their salaries can be changed by the Legislature.

We are also convinced that the Mayor and City Council of Baltimore did not derive any power from the Home Rule Amendment to change the salaries of public officers during their terms of office. Section 6 of this Amendment provides that the power heretofore conferred upon the General Assembly to prescribe the number, compensation, powers and duties of the County Commissioners in each County, and the power to make changes in Sections 1 to 6, inclusive, of Article 11, when expressly granted, are transferred to the voters of

each County and the voters of the City of Baltimore respectively. We observe that the Amendment accords equal treatment to the Legislature's power (1) to fix the compensation of the County Commissioners in each County and (2) to make changes in the compensation of the Mayor and the members of the City Council of Baltimore. We have stated that Section 35 of Article 3 prohibits the Legislature from changing the salaries of the County Commissioners during their terms of office. It is significant that the Legislature has made no distinction, in so far as the application of Section 35 is concerned, between a County that·remains subject to full control of the Legislature and a Charter County.

We now come to the contention that, twelve years prior to the adoption of the Charter of .Baltimore under the Home Rule Amendment, the Legislature indicated its belief that the Mayor and City Council of Baltimore was not prohibited by the Constitution from changing the salaries of its public officers during their terms of office. The Legislature gave evidence of that opinion in Chapter 459 of the Acts of 1906. That Act authorized the Board of Estimates to increase or decrease the salaries of all municipal officials and other persons whose salaries are fixed in acts relating to the City of Baltimore, except the salaries of the members of the Board of Estimates, with the proviso that "when the salary of any municipal official or other person whose salary is so named shall be so increased or decreased it shall not again be so increased or decreased during the term of office of said municipal official or other person."

The same proviso is included in Chapter 80 of the Acts of 1914, which repealed and re-enacted the Act of 1906. Again in 1924, when the Legislature gave the Mayor and City Council the power to increase or decrease the salaries of the members of the Board of Estimates, the Act contained the proviso that "when the salary of any member shall be so increased or decreased it shall not again be increased or decreased during his term of office." Acts 1924, ch. 228.

After subsequent amendments of the law, the Baltimore City Charter, 1949 Ed., sec. 31, provides as follows:

"In preparing the Ordinance of Estimates the Board of Estimates shall have power to increase or decrease the salaries of all municipal officers except those of the members of the Board; provided, however, that, excepting officers in the Classified City Service, when the salary of any municipal officer shall be so increased or decreased it shall not again be increased or decreased, as the case may be, during the term of such municipal officer.

"The Mayor and City Council may, by ordinance, increase or decrease the salaries of the municipal officers comprising the Board of Estimates, but when the salary of any such officer shall be so increased or decreased it shall not again be increased or decreased, as the case may be, during his term of office; provided, however, that such salaries shall not be decreased below the amount fixed by the Charter. The Board of Estimates shall include in the Ordinance of Estimates each year appropriations for the salaries of such officers, determined as therein provided. Salaries of municipal officers shall not be decreased below the amount fixed by the Charter. * * *"

Defendants also relied heavily upon the undisputed fact that the Mayor and City Council has on a number of occasions increased and decreased the salaries of city officials during their terms of office. The Assistant Budget Director testified that as far back as 28 years ago the salary of the Mayor of Baltimore was raised from $10,000 to $12,000 during his term of office. He further testified that from time to time the salaries of the Comptroller, the President of the City Council, the Vice President of the City Council, members of the City Council, and other city officials of Baltimore had been changed during their terms of office.

It is an accepted rule that a contemporaneous construction of a provision of the State Constitution by the Legislature, which has been acquiesced in for a long period of time and uniformly followed, furnishes a strong presumption that the provision was correctly interpreted and is a valuable aid in

determining the intention of the framers. *Trustees of the Catholic Cathedral Church of Baltimore v. Manning,* 72 Md. 116, 130, 19 A. 599; *Humphreys v. Walls,* 169 Md. 292, 299, 181 A. 735; *Johns Hopkins University v. Williams,* 199 Md. 382, 86 A. 2d 892. That rule is based on the theory that the interpretation placed upon the Constitution by the contemporaries of its framers is entitled to respectful consideration, inasmuch as they had the best opportunities for learning the intention of the framers and the understanding of the people who ratified the Constitution. We have made it plain, however, that the rule of contemporaneous construction should be applied with caution and cannot enlarge, restrict, or contradict the plain language of the Constitution. We emphasize that no acquiescence in an erroneous construction of a constitutional provision for any period of time can legalize usurpation of power where the language of the Constitution is plainly expressed. *Johnson v. Duke,* 180 Md. 434, 442, 24 A. 2d 304.

We cannot apply the rule of contemporaneous construction in the present case, because the language of Section 35 of Article 3 is plain and definite, and the Act of 1906 was really not a contemporaneous construction at all, because it was passed nearly 40 years after the adoption of the Constitution.

Furthermore, there were indications prior to 1906 that the Legislature thought that Section 35 did apply to the City of Baltimore. In Article 4, entitled "City of Baltimore," of the Code of Public Local Laws of 1888, Section 10 directed that the Mayor of Baltimore should receive such salary as shall have been provided by ordinance "previous to his election," and Section 28 directed that the City Council shall fix by ordinance the compensation for the services of its members, which "shall not be increased during their continuance in office."

As we hold that Article 3, Section 35, of the Maryland Constitution is applicable to the city officials of Baltimore, we must reverse the decree of the Court below and remand this case for the passage of a decree declaring the challenged portions of the ordinances void and granting the injunction prayed for.

*Decree reversed and case remanded,*
*with costs.*