JAMES L. KERNAN COMPANY *v.* WILLIAM COOK.
[No. 15, January Term, 1932.]

*Decided March 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*J. Purdon Wright,* with whom was *Samuel Carliner* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal in this case is from a judgment in favor of the vendee of land for the portion, with interest, of the purchase money paid by the vendee to the vendor, and refused to be returned by the vendor when the contract of sale was terminated. The jury found against the vendor's contention that the deposit was forfeited under the circumstances accompanying the refusal of the vendee to complete his performance of the contract, and with the vendee's position that his obligations were discharged, and the deposit payable to him according to the express terms of the contract. The errors assigned are certain rulings on the testimony and on the prayers.

The plaintiff, William Cook, has carried on for many years the business of undertaking in Baltimore. On July 15th, 1925, he entered into a contract with the George R. Morris Organization, a corporation engaged in the real estate business, whereby the plaintiff agreed to buy of the James L. Kernan Company an improved lot of land in Baltimore for $82,500, and paid to the George R. Morris Organization the sum of $5,000 on account of the purchase money. The buyer signed and sealed the written contract, which was signed, but not sealed, by the George R. Morris Organization as the agent for the corporate owner, and which was delivered

subject to the acceptance of the owner, which executed its acceptance, under seal, at the foot of the contract, and made delivery thereof on July 20th, 1925. The contract thus formed between the plaintiff and defendant was subject to these terms and conditions: (a) In the event the city authorities refused the necessary permits for the location of an undertaking establishment on the lot purchased within forty-five days from July 20th, 1925, the contract was to be null and void and the deposit of $5,000 was to be returned to the vendee; (b) if the vendee should not pay the purchase price as and when agreed, the deposit of $5,000 was forfeited and would "be retained by the George R. Morris Organization as agent for the vendor for services rendered," but the forfeiture was not to relieve the vendee of his obligation to make full settlement; and (c) the contract, which was executed in triplicate, was declared to contain the final and entire agreement between the parties thereto, which were the vendor, the agent of the vendor, and the vendee, and the parties were not to be bound by any terms, conditions, or representations not embraced within the contract.

The parties had stipulated that time was of the essence of the contract, and, after the expiration of the forty-five days' period within which the contract was to be performed, the vendor and the vendee signed and executed a rider on the original contract, whereby they agreed to extend its terms for thirty days, beginning with September 5th, 1925. The extension, therefore, expired with Sunday, October 4th.

In the trial the plaintiff or vendee offered the original contract and the written extension in evidence, and produced testimony tending to prove that the plaintiff had paid the deposit of $5,000 to the George R. Morris Organization as the agent of the vendor, and that the agent had forthwith delivered this sum to the vendor; and that the plaintiff had applied on July 21st, 1925, for the necessary permits to use the premises in question for an undertaking establishment, and, within the period fixed by the original contract and its extension, had been refused such permits by the proper authorities of Baltimore; and, further, that, after demand

made, the vendor has refused to return the deposit of $5,000 to the purchaser.

Since one entire day had intervened between the execution of the second agreement and the expiration of the forty-five days within which the first agreement was to be performed, and the vendee had been unable, during the prescribed period of forty-five days, to procure a permit to use the premises for the business of an undertaker, the vendee was not in default, and was entitled to receive the deposit of $5,000 from the vendor unless they otherwise agreed. To gratify the statute of frauds an agreement to revive the original agreement for the sale of the land must be in writing. *Browne on the Statute of Frauds* (5th Ed.), sec. 268; *Abrams v. Eckenrode,* 136 Md. 244, 247, 248, 110 A. 468. The parties, accordingly, indorsed on the first contract a second agreement in writing whereby they agreed to revive the terms of the original contract for a fresh period of thirty days, that was to begin with September 5th, 1925. The effect of this stipulation was to incorporate in the new contract all the terms of the old, with the single modification of the period during which the second contract was to be performed. By explicit language the time for the performance of the second contract did not extend beyond October 4th, 1925, and within this limitation, the effort of the vendee to obtain the requisite municipal permit had failed; and, because the payment of the $5,000 on the first contract had, by virtue of the provisions of the second contract, become a similar credit on the second contract, the vendee had the right to recover of the vendor this payment. *Colonial Trust Co. v. Fid. & Dep. Co.,* 144 Md. 126, 123 A. 187; *Furness, Withy & Co. v. Randall,* 124 Md. 101, 106, 107, 91 A. 797; *Baltimore Pearl Hominy Co. v. Linthicum,* 112 Md. 34, 75 A. 737; *Chicora Fertilizer Co. v. Duncan,* 91 Md. 144, 156, 157, 46 A. 347.

The vendor does not deny this would be the result if the second contract were to remain unchanged. It, however, offered testimony which, although denied by the vendee, tended to show, if believed, that the vendee, before the expiration of the new period of thirty days, had, by parol declara-

tions, (a) stated to the president of the vendor and to two representatives of the George R. Morris Organization that, although he had not been able to get the permit, he had decided to take the property without the permit; and (b) authorized, in the opinion of the *nisi prius* court, one of these representatives to advise the vendor that he would complete the purchase, although he did not obtain the permit. It was pursuant to this disputed authorization that the representative, on October 2nd, 1925, wrote and delivered to the vendor a letter to the effect that the vendee would take the property as soon as his attorney could complete an examination of the title to the property. The offer thus made, if accepted, was upon a sufficient consideration, and constituted an agreement, made in substitution of a stipulation of the original and subsisting unperformed contract, which provided for a performance different from and in substitution for that to which the parties were bound and entitled by the original obligation, and should be called a substituted contract which, in the language of Mr. Williston, rescinds rather than waives the inconsistent terms of the prior contract. *Williston on Contracts,* sec. 679. The offer of the vendee was to eliminate the condition of the executory contract that the vendee acquire the permit within the specified length of time, and to enlarge the time for consummation of the purchase by the vendee until his attorney could make an examination of the title to the premises agreed to be bought. The offer thus to vary the written contract was by letter, which had first to be received, and then accepted by the vendor. Furthermore, the promise on the part of the offerer involved not only the expression of assent to it of the offeree, but also the giving by the offeree of the counter promise requested, so the contract proposed would be bilateral, and, therefore, to complete this offer of a bilateral contract the acceptance of the offeree required communication to the offeror before the offer was terminated by revocation by the offeror, since the general rule is that unsealed promises, without consideration, may be revoked at any time before the creation of a contract by acceptance. *Williston on Contracts,* secs. 34, 70, 71, 50, 55, 56, 64, 66, 1839,

1840; *Union Trust Co. v. Knabe,* 122 Md. 584, 606, 607, 89 A. 1106; *Wheat v. Cross,* 31 Md. 99, 102, 103; *Coleman v. Applegarth,* 68 Md. 21, 28-31, 11 A. 284; *Sturtevant Co. v. Dugan & Co.,* 106 Md. 587, 614, 68 A. 351.

There is nothing in the record from which it could be inferred that the offeree communicated its acceptance of the offer contained in the letter of October 2nd. On the contrary, the proof is that, before the offeree had taken any action, the offeror, under date of October 4th, wrote to a representative of the George R. Morris Organization, the agent of the offeree, a refusal to accept the property under the contract of sale expiring on October 5th, on the specific ground that he had not been able to obtain the permit, and expressed a willingness to have the period of the contract prolonged for an additional fifteen days, but, if the offeree would not agree to this extension, the offeror demanded the return of his deposit of $5,000. No further enlargement of the time of performance under the contract of September 5th was agreed to, and, on October 7th, the offeree or vendor declined to return the deposit, and notified the vendee or offeree that he would be required to complete the transaction, because the offeree considered the property sold as a result of the delivery of the letter of October 2nd.

It would seem to follow from this statement that the offer contained in the letter of October 2nd, was revoked on October 4th, before the offeree's acceptance and counter promise had been communicated to the offeror, and, consequently, that no new contract was made. *Supra.* When, at the expiration of the period agreed, the condition that the permit be meanwhile secured was not fulfilled, the contract of September 5th, without breach by either party, was discharged by force of its own provision for its determination under the specified circumstance of a permit not having been granted by municipal authority; and the vendee was entitled to the return of the deposit of $5,000.

With the controlling rules and principles of law applicable to this record kept in mind, it will be found that the defendant sustained no injury by the rulings of the court at *nisi*

*prius.* The questions on the evidence are presented by the first fifteen bills of exceptions. The second exception is to the admission of a letter, written by the plaintiff to a representative of the Morris Organization, the agent of the owner, under date of October 4th, which was a demand that the defendant return the deposit money in the event that the defendant would not prolong the period of the contract fifteen days more. This evidence of a conditional demand was relevant and material in support of the plaintiff's action. The testimony excluded under the first and third bills of exceptions was not admissible on cross-examination, as it was not responsive to what had been testified on the witness's direct examination. The evidence rejected on the fourth and fifth bills of exceptions was irrelevant, as it related to other and independent business transactions between the plaintiff and the Morris Organization. The answer of the witness stricken out in the sixth bill was an inadmissible impression in reference to a subject-matter about which the witness later declared he was incompetent to testify, while that expunged on the seventh bill was not responsive to the question and was, moreover, the expression of an opinion when the inquiry was for facts, and that excluded on the eighth bill of exceptions was hearsay, and related to a telegram from a third party to the president of the defendant. The testimony offered on the ninth bill of exceptions was later given by the same witness without objection. The answers to the questions objected to in the tenth and eleventh bills of exceptions were not prejudicial, as they were simply the witness' explanation why he did not consider himself qualified to answer a question in reference to the payment of commissions to a real estate agent. In the twelfth bill the court rejected the offer of an irrelevant letter passing from the Morris Organization to the real estate agent of the vendor, and the objection in the thirteenth bill of exceptions came too late, as it was not made until the question had been answered.

During the trial, certain testimony was taken subject to exception. It embraced letters passing between the parties,

which the court refused to strike out because they tended to show a modification of certain terms of the written contract between the parties, and parol testimony (a) of an unexecuted change in the terms of the contract and (b) of the agency of the Morris Organization to forward to the vendee one of such letters. The court struck out the parol testimony offered for the first purpose, on the clear ground that the contract for the sale of land was within the fourth section of the Statute of Frauds and, so, could not be varied by testimony in parol; but refused to strike out the parol testimony in reference to agency because that was not objectionable. In these rulings no error is perceived. *Abrams v. Eckenrode,* 136 Md. 246-248, 110 A. 468. *Browne on Statute of Frauds.* sec. 370a.

The court granted the defendant's prayer declaring the burden of proof to rest upon the plaintiff, and its other prayer instructing the jury that the plaintiff could show by parol testimony that the Morris Organization was the plaintiff's agent in the writing of the letter of October 2nd; and, also, granted the plaintiff's third prayer in connection with the defendant's modified fourth and sixth prayers. The plaintiff's third prayer was based upon the theory that the plaintiff would be entitled to recover if the jury should find that the plaintiff endeavored to obtain the necessary permits for an undertaking establishment within the time specified by the contract of the parties, and failed because of the refusal of the municipal officials to grant the permits within the prescribed period, and that the plaintiff demanded and refused the return of the payment of $5,000. This prayer was drawn upon the hypothesis that the jury would believe the plaintiff's version of the facts, and, in order that the conflicting position of the defendant with reference to what was established by the testimony as the true facts might be presented, and the case, although submitted from the angle of each litigant, would be considered as a whole, the court granted the plaintiff's first prayer expressly in connection with the defendant's modified fourth and sixth prayers. These two prayers of the defendant's instructed the jury in

effect that plaintiff could not recover if the jury should reject the plaintiff's testimony and find that, about October 2nd, he agreed, and authorized the Morris Organization as his agent *pro hac vice* to notify the defendant, that he would consummate the contract, although the permit was refused, as soon as his attorney could complete the examination of the title to the property, and that the Morris Organization, by its paper writing, did so notify the defendant, and that thereafter the plaintiff refused to take the property, although the defendant was ready, willing and able to convey, and gave the plaintiff reasonable notice and opportunity to complete the purchase. Neither of the defendant's two prayers required the jury to find an acceptance of the plaintiff's offer, and a communication by the defendant to the plaintiff of the acceptance, before the plaintiff revoked his offer, but this omission was to the advantage of the defendant, and it cannot object to the prayers on that account. It follows that the granted prayers submitted the entire case to the jury in a form which afforded the defendant every available defense and gave it no basis for complaint. The court properly rejected the other prayers of the defendant, as the record did not justify a peremptory instruction for a verdict for the defendant, and defendant's prayers not to this effect were either defective or rendered superfluous by the granted instructions.

Finding no prejudicial error in the rulings of the court, the judgment will be affirmed.

*Judgment affirmed, with costs.*