## ULRICH *v.* BOARD OF COUNTY COMMISSIONERS OF CECIL COUNTY

[No. 49, September Term, 1976.]

*Decided November 3, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Eugene F. Herman* for appellant.

*William B. Calvert* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This action was initiated in the Circuit Court for Cecil County by the Board of County Commissioners of that county (the Commissioners) which sought declaratory and injunctive relief against John J. Ulrich, a member of the county's Board of License Commissioners (the Board). From a decree declaring that Ulrich had resigned from the Board on 28 July 1975 and permanently enjoining Ulrich from taking any part in the functions of that Board, Ulrich appealed to the Court of Special Appeals. We granted certiorari before the case was considered by that court.

Because Ulrich apparently had persisted in purporting to act as a member of the Board, the Commissioners had filed suit on 20 August 1975. After a flurry of pleading and discovery, the matter came on for hearing. It was stipulated that at a meeting of the Commissioners held on 27 June 1972, Ulrich had been appointed a member of the Board for a five-year term commencing 1 July 1972.

There was testimony that the three members of the Board, including Mr. Ulrich, at the invitation of the Commissioners, attended a meeting of the Commissioners held on 28 July 1975. At the hearing below, in response to questions by the Commissioners' counsel, Mr. Ulrich described what took place:

> "Q And, do you recall, Mr. Ulrich, the meeting at which you appeared before the County Commissioners on July 28, 1975, where you and Mr. [Herbert] Montgomery and Mr. [Edward H.] Williams, comprising the Board of License Commissioners, were asked to come in by the County Commissioners?
>
> "A Yes, sir, I do.
>
> "Q And, is it true that at the time that meeting occurred after the three of you were in there, as well as all three members of the County Commissioners, that Mrs. Maloney, as President of

the County Commissioners, asked for the resignation of yourself and Mr. Montgomery?

"A Yes.

"Q Isn't it also true that at that time you immediately resigned your position as a member of the Board of License Commissioners?

"A I offered my resignation to Mrs. Maloney.

"Q All right. And —

"A I did not resign. I offered my resignation. That is a little bit different there, sir.

"Q All right. Now, isn't it true that during the course of that meeting that you stated to Mrs. Maloney as President of the Board, as well as the other members of the Board of County Commissioners that 'You have my resignation'?

"A Yes.

"Q And so that you were saying a minute ago that you say that you offered it?

"A I offered her my resignation.

"Q But then, you specifically said that 'You have my resignation,' didn't you?

"A Yes.

"Q And, isn't it also true that as the meeting progressed that sometime later before you and the other members of the Board of License Commissioners left the room that you once again turned around and said to the Board of County Commissioners that you were happy to resign or that you were glad to resign?

"A Yes. You are right."

Ulrich testified that within 30 to 45 minutes after leaving the meeting with the Commissioners, he telephoned Mrs. Mary A. Maloney, the President, to tell her that he "had changed [his] mind about resigning." According to Ulrich, Mrs. Maloney said nothing and "hung up."

On 30 July 1975, Mrs. Maloney wrote the following letter to Mr. Ulrich:

"Mr. John J. Ulrich
520 Bow Street
Elkton, Maryland 21921

Dear Mr. Ulrich:

When you met with the Board of County Commissioners on Monday, July 28, 1975, you extended [sic] your resignation from the Board of License Commissioners for Cecil County, and I, as the County Commissioner from your district, as well as President of the Board, accepted your resignation.

As such, I am now in the process of considering another person to recommend for appointment to fill this position on the Board of License Commissioners.

I want to thank you for your willingness to resign for the reasons that were discussed at Monday's meeting.

A copy of this letter will be filed at the meeting of the Board of License Commissioners on Thursday, July 31, 1975, prior to its consideration of any business on that date.

Very truly yours,

/s/ Mary A. Maloney
President"

After the evidentiary hearing, the chancellor (Mackey, J.) filed a comprehensive opinion. He identified four threshold questions:

"1. On July 28, 1975 were the three County Commissioners assembled as a body to conduct business or did they just happen to be in the same room, each acting individually?

"2. On July 28, 1975 did the Commissioners as a

body decide to request the resignation of the Respondent [Ulrich]?

"3. On July 28, 1975 was the President of the Board of County Commissioners, in connection with this matter, authorized to speak and act for the Board of County Commissioners?

"4. On July 28, 1975 were the actions of the President ratified by the Board of County Commissioners?"

and made the following findings of facts as regards them:

"Based upon the foregoing agreed upon and undisputed evidence the Court finds as a fact that on July 28, 1975:

"The Board of County Commissioners were assembled as a body in regular session duly called to order by the President to conduct business.

"The Board as a body agreed to, and did in fact, discuss a number of matters including the desirability of obtaining the resignation of the Respondent.

"The President was authorized by the Board to speak and act for the Board in this matter.

"The members of the Board being present, hearing and observing all that occurred, and there being not a scintilla of evidence of objection or disagreement — all indications pointing in fact to concurrence and agreement — ratified the action of the President in this matter."

On the merits, the court found:

"1. The Respondent was advised that Cecil County citizens were complaining of apparent conflicts of interest involving the Respondent in the discharge of his duties as a member of the Board of License Commissioners and therefore it would be in the best interests of everyone concerned if he resigned. Accordingly, the County Commissioners requested his resignation. He immediately

responded that 'You have my resignation' and added he was 'happy to resign.' The President thanked him.

"2. Later that day he changed his mind, called the President, and told her so.

"3. Still later that day he talked on the telephone to the President at her home and there is a dispute as to what was said.

"4. The fact of what the County Commissioners considered to be the resignation by the Respondent and the acceptance thereof by the County Commissioners on July 28, 1975 was communicated in writing to the Respondent on July 30, 1975."

We cannot say that any of these findings was clearly erroneous, Maryland Rule 886.

Ulrich challenges the decree which granted the relief prayed on two grounds:

(i)

"The trial court sitting in equity lacked subject matter jurisdiction to confer the prayed for relief, since the instant case involved an inquiry into a public official's right to public office, and accordingly, could only be correctly resolved in an action at law by way of a mandamus proceeding."

While it is true that mandamus is the usual method by which title to public office is challenged, *Forami v. Reynolds*, 248 Md. 246, 252, 236 A. 2d 20, 25 (1967); *Johnson v. Duke*, 180 Md. 434, 437, 24 A. 2d 304, 305 (1942); *Carey v. Jackson*, 165 Md. 472, 477, 169 A. 922, 924 (1934); *Hummelshime v. Hirsch*, 114 Md. 39, 50, 79 A. 38, 42 (1910), it is no longer the only mechanism available where a status or right is at issue, as was the case here where the determination of a fact, whether Ulrich had resigned, was the pivotal question, rather than the validity of his title to the office.

The Uniform Declaratory Judgments Act, as amended by Chapter 2, § 2 of the Laws of 1973, effective 1 January 1974,

is instructive in this regard. Maryland Code (1974), § 3-409 of the Courts and Judicial Proceedings Article now provides:

"(a) *In general.* — Except as provided in subsection (d), a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) *A party asserts a legal* relation, *status, right,* or privilege and *this is challenged or denied by an adversary party,* who also has or asserts a concrete interest in it.

"(b) *Special form of remedy provided by statute.* — If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

"(c) *Concurrent remedies not bar for declaratory relief.* — *A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal* remedy, whether or not recognized or regulated by statute.

"(d) *Exception as to divorce or annulment of marriage.* — Proceeding by declaratory judgment is not permitted in any case in which divorce or annulment of marriage is sought.

"(e) *Speedy hearing.* — A court may order a speedy hearing of an action of a declaratory judgment and may advance it on the calendar." (emphasis supplied in § 3-409 (a) (3) and (c)).

Obviously, the existence of the extraordinary remedy of mandamus did not bar declaratory relief in this case.

(ii)

"Ulrich did not resign from the Board of License Commissioners since he withdrew his resignation before it was accepted by the Board of County Commissioners."

Ulrich attempts to buttress this contention by relying on the common law rule that since a public officer who submits his resignation is required to perform the duties of his office until his resignation is accepted, he has the correlative right of withdrawing his resignation prior to the time it is accepted, *see Haine v. Googe,* 248 F. Supp. 349, 351-52 (S.D.N.Y. 1965).

While this is supported by some of the cases, *Edwards v. United States,* 103 U. S. 471, 473-75 (1880); *Sawyer v. City of San Antonio,* 234 S.W.2d 398, 401 (S. Ct. Tex. 1950); *Commonwealth v. Berninger,* 255 Ky. 451, 452, 74 S.W.2d 932, 933 (1934); Annot., 95 A.L.R. 215, 216 (1935); 56 Am.Jur.2d *Municipal Corporations, Etc.* § 305 at 346 (1971); 63 Am.Jur.2d *Public Officers and Employees* § 163 at 728-29 (1972); 3 E. McQuillin, Municipal Corporations § 12.122 at 511 (3d ed., 1973 Rev. Vol.), there is authority to the contrary, *State v. Marsh,* 162 Neb. 593, 595, 77 N.W.2d 163, 165 (1956); *Gelson v. City of New York,* 237 App. Div. 889, 261 N.Y.S. 552, *aff'd,* 262 N.Y. 497, 188 N. E. 36 (1933); Annot., *supra,* 95 A.L.R. 218; 62 C.J.S. *Municipal Corporations* § 732 at 1502 (1949).

Even at common law, however, a resignation could not be withdrawn after it had been accepted, *Haine v. Googe, supra,* 248 F. Supp. at 351; *see Commonwealth v. Berninger, supra,* 74 S.W.2d at 933; *see Sawyer v. City of San Antonio, supra,* 234 S.W.2d at 402; 56 Am.Jur.2d *Municipal Corporations, Etc., supra,* § 307 at 347; 3 E. McQuillin, Municipal Corporations, *supra,* § 12.122 at 512.

Ulrich challenges the chancellor's conclusion that under the facts of this case, no formal acceptance of the resignation was required, or alternatively, the resignation was accepted. We are satisfied that the first alternative is the correct one. While we can envision circumstances where

a resignation from a public office might have to be formally accepted to relieve a public officer of his duties or to create a vacancy, the idea is simply not applicable where a resignation is requested and then tendered in response to the request, as was the case here. The short of it is that the acceptance of the resignation was implicit in the request for the resignation, which signified the Commissioners' willingness to relieve Mr. Ulrich of the performance of his duties.

*Decree affirmed, costs to be paid by appellant.*