# JENNIE LEMLICH *v.* BOARD OF TRUSTEES OF HARFORD COMMUNITY COLLEGE ET AL.

[No. 127, September Term, 1977.]

*Decided May 8, 1978.*

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Walter S. Levin,* with whom was *James R. Whattam* on the brief, for appellant.

*Warren M. Davison,* with whom were *Earle K. Shawe, Leslie R. Stellman* and *Shawe & Rosenthal* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

We here audit the discordant notes which radiated from the rehearsal sessions of Meredith Willson's *The Music Man* at the Harford Community College theatre and which, for a while in the fall of 1975 and with lingering overtones to the present, permeated the atmosphere at that academic institution.

The appeal now before us arises from a suit for declaratory and injunctive relief which was instituted by appellant Jennie Lemlich in the Circuit Court for Harford County against the Board of Trustees of Harford Community College.[1] When the trial court (Higinbothom, J.) declared that the appellant (1) had tendered her resignation as a member of the college faculty, and (2) had not effectively withdrawn this offer prior to its acceptance by authorized corporate officials, with the

---

1. In addition to suing this corporation, Mrs. Lemlich named as defendants the president of the college and the members of the board of trustees, in both their official and individual capacities; however, suit against these officials in their individual capacities was by agreement abandoned. The corporate entity, the president of the college and the members of the board of trustees are all appellees and cross-appellants here.

consequence that the court failed to order her reinstatement (either with or without back pay) to her former faculty position, Mrs. Lemlich appealed. The college group cross-appealed from another portion of the decree which declared that the board of trustees of the college, and not its president, possessed sole authority to accept this and other faculty resignations. In considering the matter on certiorari before review by the Court of Special Appeals, we conclude Mrs. Lemlich did unconditionally withdraw her proffered resignation prior to its acceptance by authorized college officials; consequently we will direct modification of the declarations set out in the trial court's decree.

We learn from the record before us that the appellant was first employed by Harford Community College in September of 1970 as a technical assistant. In this non-faculty position she acted as co-director of the Susquehanna Festival Theatre, a community-oriented amateur theatrical endeavor based at and sponsored by the college. In August 1973 Mrs. Lemlich's status with Harford changed. At that time she became a member of the college faculty, employed under the terms of the standard faculty contract then being used; her duties were those of executive director of the theatre. In the spring of 1975, when a new type of contract was adopted by the college to record its understandings with faculty members, Mrs. Lemlich and the board of trustees executed a new employment agreement covering the period July 1, 1975, through June 30, 1976. By its specific terms this new compact was to continue in force from year to year unless notice within a designated time frame was given by one party to the other of a desire to terminate the employment. The new understanding denominated Mrs. Lemlich an "Instructor 5"; her duties with the college, however, continued to be those of executive director of the Susquehanna Festival Theatre, in charge of both its artistic and business aspects. Later in that spring of 1975 the appellant expressed her concern to college authorities over the heavy work burden entailed by her responsibility for both the artistic and business aspects of the theatre, and extensive discussions were held during the summer and early fall regarding a proposed reorganization

of the theatre whereby Mrs. Lemlich would be relieved of some of the business portions of her duties. Although originally in tentative agreement with the college's proposed reorganization, the appellant's attitude as the contours of the plan emerged changed to "total disagreement." During this discussion period, Mrs. Lemlich continued with preparations for production of the play *The Music Man,* scheduled to run at the college theatre from October 22 to November 2, 1975. On October 13, increasingly unhappy with the anticipated reorganization and in a highly emotional state (brought on in part, appellant says, because preparations for production of the musical with its cast of 150 were not going smoothly), Mrs. Lemlich rushed to see the college president, Dr. Kenneth W. Oosting.

Since aspects of our decision here in no small degree depend on factual determinations made by the trial judge, we set out, with minor editing, Judge Higinbothom's words relating what he concluded then took place:

> The second scene occurred in Dr. Oosting's office, or the doorway thereto. Mrs. Lemlich arrived looking upset and stayed only a brief time. President Oosting testified that she said, "I'm going to solve all your problems; I resign." She allegedly further said that no one understood her and that she was giving up the enterprise. Mrs. Lemlich testified that she never used the word "resign," but had said, "You can do anything you want with the theatre; your troubles are over." Dr. Oosting tried to get her to reconsider, but she declined and returned to her theatre office. The entire episode, from the time she left her office to her return, lasted only five to ten minutes. When she did return, she merely picked up her briefcase, and told those in the room, "Tell the cast I quit." She slammed the door and once again concluded a scene through an emotional exit. Mrs. Lemlich tried to explain that by using the word "quit" she meant she was quitting her dream.

\* \* \* \*

From the time of her meeting with Dr. Oosting on

October 13th until Wednesday, October 15th, Mrs. Lemlich did not appear to perform any functions on behalf of her employment at the college. There is some question raised by the testimony as to how much theatre work she actually was accomplishing through her presence at the theatre office on Wednesday and Thursday, October 15th and 16th, especially in view of the testimony which showed her to be a disruptive force at the office. Both Deidre Bastian and Michele Nelson, who had been placed in charge of the theatre after the resignation, were quite concerned over appellant's presence in the office, but they were instructed by the administration to keep calm and thus not oust her at that time. On Wednesday and Thursday evenings, despite the transfer of control of the theatre, Mrs. Lemlich still attended the rehearsals.

On October 15th, appellant had visited Dean Van Winkle and requested a withdrawal of her resignation, but was told to await word from Dr. Oosting. . . . On October 17th, around 7:00 p.m., Dr. Oosting called Mrs. Lemlich's husband with his answer and read him a letter informing appellant that her resignation was accepted and that she was not to interfere with the production of "Music Man" scheduled to open that Saturday night. . . . As a result of the chaos [which ensued after attempts by the Lemlichs to disrupt the production by urging the cast not to perform], members of the cast and administration met at the school and agreed to have Mrs. Lemlich return as Executive Director for the run of the play.

The next morning, Saturday, October 18th, Mrs. Lemlich's husband called Dean Van Winkle and placed several conditions on his wife's returning to the play. . . .

As a result of these latest demands and because a rehearsal was scheduled for 3:00 p.m. on Saturday, October 18th (the same date), the college decided to

take legal action. With the approval of the Chairman of the Board of Trustees, officials of the college applied for and obtained a temporary restraining order enjoining the Lemlichs from entering upon the college premises . . . .

These findings of fact made by the trial judge, being amply supported by the record, are not in our view clearly erroneous; consequently, Maryland Rule 886 is a complete answer to any possible suggestion which might be made that the trial court erred when it concluded, and then declared in its decree, that Mrs. Lemlich did in fact tender her resignation as a member of the college faculty on October 13, 1975.

Similarly, we concur, contrary to the appellee's urging, with the trial court's finding and declaration that the president of the college had not been either statutorily or by action of the board of trustees clothed with final authority to accept faculty resignations. Since we conclude the sole authority in this regard rested with the board of trustees, Dr. Oosting's efforts to accept Mrs. Lemlich's resignation were ineffectual. In considering this phase of the matter, we point out that the legislative authority for the creation and governing of community colleges in this State is contained in Article 77A of the Maryland Code; section 1 (b) of that article gives to the boards of trustees of community colleges the power "[t]o maintain and exercise general control over the community college . . . , and to adopt reasonable rules, bylaws or regulations to effectuate and carry out the provisions of this subtitle." Md. Code (1957, 1975 Repl. Vol.), Art. 77A, § 1 (b). Section 1 (c), the only possible relevant provision referring to the president, gives the board the power to appoint that officer and further provides that his duties include *recommending* to the board both appointment and discharge of employees; he is also made responsible for the conduct of the college and the administration and supervision of its departments. As we read Article 77A, there is no statutory grant to a community college president of authority to finally accept a faculty member's tender of resignation; on the other hand, there is nothing in that article

to prevent his exercising that authority if it is granted to him by the board of trustees.

That, as found by the trial court, the board of trustees had granted, at the time pertinent here, no power to the president of Harford Community College to finally accept faculty resignations is well documented in the record. Initially we point out that the bylaws adopted by Harford's board of trustees in Article I(C) (11) direct the president, among other duties, to *recommend* to the board for its action the appointment and discharge of teaching and other personnel; he is also charged, after consultation with the appropriate faculty, with making recommendations to the board regarding policies, a college calendar, a schedule of tuition and fees, and an annual budget. Of more significance, we think, as will become plain a little later, is the provision of chapter VII, section 8.51 of the board of trustees' policy manual, in effect throughout the period with which we are here concerned, which in part reads: "[T]he legal corporate entity of the College is its Board of Trustees, *in whom alone* resides the authority to enter into and sever contractual agreements with faculty members." (Emphasis added.)[2] We thus think it clear that the trustees retain sole authority to enter into an agreement terminating faculty contracts of employment, and the trial judge was correct in making a declaration to that effect in his decree.

Since the college does not contend, and the trial court did not find, that Mrs. Lemlich breached her employment contract upon tendering her resignation to President Oosting, thus justifying her dismissal, we now consider whether the proferred resignation was, as determined by the trial court, effectively accepted by the board when it purported to do so at its October 30, 1975, meeting.[3] That a contract may be

---

**2.** Also of special interest in this regard are policy manual provisions that the president "shall serve as the official channel for all communications between staff members and the Board of Trustees," and shall recommend the appointment, assignment, promotion, and termination of all personnel, including teachers. Mention is also made of the fact that the policy manual in addition provides that "[t]he Board of Trustees has the *sole* authority under law to take action on the dismissal of a faculty member . . . ." (Emphasis added.)

**3.** Since a teacher is a public employee rather than a public official, *see* Duncan v. Koustenis, 260 Md. 98, 105, 271 A. 2d 547, 550 (1970), we are not

rescinded by mutual agreement of the parties is well established by the prior decisions of this Court, *Glen Alden v. Duvall,* 240 Md. 405, 431, 215 A. 2d 155, 172 (1965); *Quillen v. Kelley,* 216 Md. 396, 410, 140 A. 2d 517, 525 (1958), the release of one party being sufficient consideration for the release of the other. *Talbert v. Seek,* 210 Md. 34, 44, 122 A. 2d 469, 473 (1956). Equally well settled in this State is the principle that the validity of such an understanding to rescind is controlled by the same rules as in the case of other contracts. *Quillen v. Kelley, supra.* It is so basic a contract principle that minimal supporting authority is needed to authorize the statement that there must exist an offer by one party and an unconditional acceptance of that precise offer by the other, prior to withdrawal by the offeror, before a binding agreement is born. *Peer v. First Fed. S. & L. Ass'n,* 273 Md. 610, 614, 331 A. 2d 299, 301 (1975); *Peoples Drug Stores v. Fenton,* 191 Md. 489, 494, 62 A. 2d 273, 276 (1948); *Kernan Co. v. Cook,* 162 Md. 137, 142-43, 159 A. 256, 258-59 (1932). Analyzing these principles in the context of the issue we now ponder, it is plain that the mere tender of a resignation by an employee under a valid fixed-term employment contract is nothing more than an offer to resign, *i.e.,* an offer to enter into a new agreement to terminate the old, which until accepted unconditionally by the offeree may be withdrawn at the whim of the offeror. *McGinn v. Amer. Bank Sta. Co.,* 233 Md. 130, 133, 195 A. 2d 615, 616 (1963); *Peoples Drug Stores v. Fenton, supra.*

In this regard the trial judge concluded, erroneously we think, that Mrs. Lemlich did not unconditionally withdraw her resignation. The judge reasoned that the demands made by the appellant after her temporary reinstatement by President Oosting vitiated any attempt to withdraw the resignation, observing:

> Not satisfied with this arrangement, [Mrs. Lemlich], as evidenced by her husband's telephone call to Dean

here concerned with whether it is necessary to accept the resignation of a public officer in order for it to become effective. *Cf.* Ulrich v. Board, 278 Md. 432, 439-40, 365 A. 2d 43, 46-47 (1976).

Van Winkle on the morning of October 18th, attempted to establish conditions which were necessary to be met before [his wife would return] to work. Although her husband stated that these were not conditions precedent, he also testified that they decided to "go for broke." Mrs. Lemlich demanded the firing of three individuals, including two who had been appointed to conduct "Music Man" in her absence. . . .

Logic would dictate that an offer to return to work, conditioned upon the discharge of other individuals and timed so as to interfere with the initial performance of a play upon which much time and effort had been spent, cannot be treated as an unconditional withdrawal of a resignation.

With this latter statement we agree, but we cannot agree that the trial court was justified in light of the uncontradicted evidence contained in the record in finding as a fact that "the resignation was not effectively withdrawn prior to October 30th, when it was accepted by the Board of Trustees." In demonstrating that this finding of the trial court was clearly erroneous we need do no more than turn to the board's own minutes of their October 30th meeting. These minutes reflect that prior to the board's taking any action relative to the pending resignation of Mrs. Lemlich, her attorney, Stephen A. Tarrant, was granted permission to address the board and stated:

"The reason for requesting to appear before the Board tonight is that Dr. Oosting has written a memo to Jennie Lemlich saying he was going to present her resignation to this Board at this session. Our purpose is to make it clear and state for the record there is no resignation, never was a resignation and none was intended nor offered. If it was implied that one had been, it was immediately squashed and our position is there is no resignation before this Board. We see this basically as a contract

between two parties, Jennie Lemlich and the Board of Trustees as the second party. In our judgment, the law is clear that only the Board of Trustees and no one acting for it, by himself or herself, can accept a resignation. We ask for the opportunity to clear up certain erroneous conclusions that may have or may have not been reached due to media coverage of the [injunction suit] last week. We think this incident has been blown entirely out of proportion and there are certain facts that we would like to get before the Board."

This plainly shows an unconditional withdrawal of the tendered resignation before it was accepted by the only body authorized to do so; consequently the court's contrary finding was clearly erroneous.[4] Rule 886.

Having determined that Mrs. Lemlich's offer to resign was withdrawn prior to acceptance, we must next decide whether her reinstatement with back pay, as requested, should be ordered. We conclude that even though Mrs. Lemlich was improperly dismissed in October, since her services could be and were legally terminated by the college effective June 30, 1976, she may not at this date compel reinstatement. This determination flows from a clause in the appellant's employment contract specifying that the board of trustees could terminate the contract of a faculty member on probationary appointment who had not completed three years of service in that capacity — as was the case with Mrs. Lemlich — by notifying her of nonrenewal for the following year no later than February 15 of each academic year. The board was thus under no obligation to continue the appellant's employment beyond June 30, 1976, so long as it gave notice by February 15 of that year that her appointment would not

---

4. In addition, it is conceded by all parties that on October 22 attorney Tarrant wrote Dr. Oosting a letter which states: "I represent Mrs. Lemlich in the matter of her alleged 'resignation.' At no time has Mrs. Lemlich resigned her position with Harford Community College." Although we need not decide the issue, this letter alone is probably sufficient to compel the conclusion that the appellant's resignation was unconditionally withdrawn before its attempted acceptance on October 30.

be renewed. The record discloses that President Oosting, at the direction of the board, sent Mrs. Lemlich a letter on October 31, 1975, purporting to accept her resignation. Quite obviously this writing was sufficient to timely notify the theatre director that her services were no longer desired; this is all the more apparent when it is recalled that at the time the board acted Mrs. Lemlich knew both that the board was aware of the fact that she did not wish to resign and that college officials had gone so far as to obtain an injunction preventing her from entering upon the college premises. Thus, even if we assume the appellant might otherwise have been entitled to reinstatement, any such entitlement could not have survived beyond June 30, 1976.

Nevertheless, it is apparent that Mrs. Lemlich is entitled to receive her salary for the time commencing with the end of the last period for which she was paid until the close of the ongoing college year, June 30, 1976. The law in this State is quite clear that "a wrongfully discharged employee is entitled to recover damages to the extent of the stipulated salary for the stipulated period, less the amount he actually earned during the period, or the amount he might have earned after his discharge by the exercise of reasonable diligence in seeking other employment in the same or similar business." [5] *Development Co. v. Houston,* 179 Md. 441, 446, 19 A. 2d 706, 708 (1941), *quoted with approval in Volos, Ltd. v. Sotera,* 264 Md. 155, 175, 286 A. 2d 101, 111 (1972). Since Mrs. Lemlich testified that she earned no additional compensation during the contract period, and since the college has offered no evidence tending to meet its burden of proving that loss of the appropriate proportion of the appellant's $14,251 annual salary could have been avoided by reasonable effort and expense on her part, responsibility to pay the unpaid portion of the full yearly salary rests with the college. *Volos, Ltd. v. Sotera, supra* at 176 [112].

5. "Moreover, a wrongfully discharged employee is entitled to reimbursement for his reasonable and necessary expenses incurred in searching for other employment." Development Co. v. Houston, 179 Md. 441, 447, 19 A. 2d 706, 709 (1941). The appellant offered no evidence tending to substantiate any such expenses here, and consequently we do not consider this possible claim.

Accordingly, we will vacate the judgment entered by the trial court and remand the case for the passage of a declaratory decree conforming to the views herein expressed.

*Judgment of the Circuit Court for Harford County vacated and case remanded to that court for the passage of a declaratory decree conforming to the views expressed in the foregoing opinion.*

*Costs to be paid by the Trustees of Harford Community College.*