**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MELVYN J. ESTRIN,

*Plaintiff-Appellee,*

v.

NATURAL ANSWERS, INC.,

*Defendant-Appellant.*

No. 03-1555

MELVYN J. ESTRIN,

*Plaintiff-Appellee,*

v.

NATURAL ANSWERS, INC.,

*Defendant-Appellant.*

No. 03-1796

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(CA-01-2294-BEL)

Argued: May 4, 2004

Decided: June 29, 2004

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Patrice A. Talisman, HERSCH & TALISMAN, P.A., Miami, Florida, for Appellant. Troy Christopher Swanson, COHEN & SWANSON, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellant Natural Answers, Inc. ("NAI") challenges the district court's granting Appellee Melvyn Estrin's ("Estrin") motion for summary judgment. NAI argues, *inter alia*, that the district court erred when it found that no contract was formed between Estrin and NAI, and that NAI did not establish a claim of promissory estoppel. Because we conclude that the district court did not err in granting the motion for summary judgment, we affirm.

I.

NAI, a company founded in 1998, manufactures and sells herbal and vitamin products. Brian Feinstein is the president, CEO, and controlling shareholder of NAI. At that time, Estrin was CEO of Phar-Mor, Inc., a national drug store chain, and was also a financier and venture capitalist. In the fall of 1999, Estrin and Feinstein were introduced by a mutual friend in the hope that Estrin would help Feinstein expand NAI's business.

On November 15, 1999, Luis Prats, attorney for Feinstein and NAI, sent a proposed agreement to Estrin. Prats indicated that the proposal was "skeletal" and that it was "not written in stone." J.A. 274-75. He also stated that many details would be filled in "if there is a preliminary agreement on these matters." J.A. 275. On November 23, 1999,

Estrin sent a response to Feinstein with a counter-proposal that "represent[ed] the lines along which [he'd] like [them] to start thinking, as [they] develop a relationship going forward." J.A. 276.

Negotiations continued through December of 1999. On January 27, 2000 and February 4, 2000, Estrin sent two payments of $100,000 each to NAI as an advance on the $1.25 million Estrin intended to invest in NAI in exchange for NAI stock. From late January of 2000 to March 19, 2000, attorneys for Estrin and NAI exchanged drafts of proposed agreements. On March 20, 2000, NAI terminated negotiations, stating that "the drafting process has and continues to reveal a substantial and material difference in our clients' positions." J.A. 722.

On May 16, 2000, Feinstein and NAI filed a breach of contract and promissory estoppel claim against Estrin in the Circuit Court for Collier County, Florida. Estrin removed the case to the United States District Court for the Middle District of Florida, and the case was then dismissed for lack of personal jurisdiction. On June 12, 2001, NAI filed a complaint in the United States District Court for the District of Maryland, Southern Division, which it voluntarily dismissed on July 31, 2001. Three days later, Estrin filed the complaint underlying this appeal, seeking the return of the $200,000 he paid to NAI in anticipation of the proposed deal. NAI counterclaimed, alleging (1) breach of contract, (2) promissory estoppel, and (3) breach of the covenant of good faith and fair dealing. Estrin filed a motion for summary judgment, which the district court granted.

II.

We review a district court's grant of a motion for summary judgment *de novo*. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). To prevail on a motion for summary judgment, a party must show (1) there is no genuine issue of material fact; and (2) it is entitled to judgment as a matter of law. *Id.* at 190. In reviewing the evidence, we draw all reasonable inferences in favor of NAI, the non-moving party, *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002), and apply the same standards as the district court. *Dist. Mem'l Hosp. v. Thompson*, 364 F.3d 513, 517 (4th Cir. 2004). Because this case arises under the district court's diversity jurisdiction, those standards are supplied by the substantive law of the state

in which the action arose. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, Maryland law applies. We address first NAI's counterclaims because they are dispositive of the motion for summary judgment.

A.

NAI's initial counterclaim alleges that Estrin and NAI entered into a contract in December of 1999, and as the breaching party Estrin is not entitled to a return of the $200,000. In order to address this claim, we must first determine whether a contract existed.

In Maryland, the hallmarks of a binding contract are "an offer by one party and an unconditional acceptance of that precise offer by the other . . . ." *Lemlich v. Board of Trs.*, 385 A.2d 1185, 1189 (Md. 1978). *See also*, *L & L Corp. v. Ammendale Normal Inst.*, 236 A.2d 734, 736 (Md. 1968) ("[W]here there is a conditional acceptance or a counteroffer a contract is not made."). It is axiomatic that

> [a] party can hardly be bound to reach the intended goal of negotiations simply by the act of negotiating. Indeed, continual redrafting of a document indicates the importance of the terms being negotiated and the parties' intention not to be bound until final execution of the written agreement. Parties engage in negotiations not because they intend that the process itself will constitute the agreement, but because they desire and intend an eventual writing that will set forth the final terms satisfactory to both sides in every respect.

*Phoenix Mut. Life Ins. Co. v. Shady Grove Plaza Ltd. P'ship.*, 734 F.Supp. 1181, 1189 (D. Md. 1990) (internal citations omitted).

NAI contends that by the end of December of 1999, a binding agreement existed between Estrin and NAI which was memorialized by several letters. Specifically, Prats sent a letter to Estrin on December 3, outlining "certain minimum requirements that must be met" before an agreement could be reached. J.A. 277. On December 10, 1999, Prats sent another letter to Estrin, summarizing the major terms of the proposed agreement. A letter from Prats to Estrin on December

16, 1999, outlined further negotiations made as a result of the terms proposed in the December 10 letter. Prats closed the December 16 letter by asking Estrin to call "so that [they could] discuss the letter and begin working on the final agreement." J.A. 288. On December 28, 1999, Prats sent a follow-up letter to Estrin, asking whether Estrin had yet engaged an attorney to work on the documentation of the proposed agreement.

In early 2000, Estrin sent the two payments of $100,000 each to NAI described above. From late January of 1999 to March 19, 2000, attorneys for Estrin and NAI exchanged drafts of proposed agreements, including draft consulting agreements, draft subscription agreements, and draft shareholders' and investor rights agreements.

On March 19, 2000, an attorney for Estrin sent an email to attorneys for NAI, including as attachments revised drafts of the consulting, subscription, and shareholder rights agreements. The email indicated that the latest changes suggested by NAI's attorneys were "quite substantial." J.A. 719. In that email, Estrin's attorney suggested that a conference call be arranged to "resolve the remaining issues . . . ." *Id.* On March 20, 2000, NAI's attorney sent a response, stating that "based on the continued gap between the documents [NAI] has been presented with and asked to sign by [Estrin], and the documents, as finalized, that [NAI] will sign, . . . all further negotiations have been terminated." J.A. 722.

These ensuing communications between the parties make it abundantly clear that there was no "offer by one party and an unconditional acceptance of that precise offer by the other" in December of 1999. *Lemlich*, 385 A.2d at 1189. Significant terms remained to be negotiated. Without an agreement as to the essential terms of the deal, including Estrin's consulting agreement, Feinstein's employment agreement, and the shareholder rights agreement, there could be no contract. *See Klein v. Weiss*, 395 A.2d 126, 141 (Md. 1978) ("[T]o establish a contract the minds of the parties must be in agreement as to its terms.") (citation omitted). In the absence of a contract, Estrin could not be in breach.

B.

NAI's second counterclaim, seeking relief under a theory of promissory estoppel, is similarly unavailing. In order to establish a claim

of promissory estoppel under Maryland law, a claimant must show: "1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce actual and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996).

Our analysis with respect to the existence of a contract applies with equal force in the context of the applicability of promissory estoppel. As discussed above, Estrin never made a clear and definite promise as to the material terms of the proposed deal. It would follow, then, that Estrin could not have any reasonable expectation that NAI would rely on the unsettled terms of an unfinalized deal, and that NAI cannot show that actions based on those unsettled terms made while drafting and negotiations were ongoing were reasonable.

## C.

Lastly, the district court did not err in dismissing Count III of NAI's counterclaim alleging a breach of the covenant of good faith and fair dealing. *See Eaglehead Corp. v. Cambridge Capital Group, Inc.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001) ("Maryland does not recognize a separate cause of action for the breach of implied duty of good faith and fair dealing.").*

## D.

Estrin seeks the return of the $200,000 he advanced to NAI in anticipation of the proposed deal. NAI contends that Estrin was the party in breach of the contract, and as such is not entitled to a return of the money. For the reasons discussed above, we agree with the district court that no contract existed between the parties. We therefore affirm the judgment in the amount of $200,000 in favor of Mr. Estrin.

---

*Several other issues were raised by the parties; we have considered all of them and find no reversible error.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*